**TTHR, L.P. d/b/a Presbyterian Hospital of Denton, Appellant,**

v.

**Normell W. GUYDEN, Individually and as heir to the Estate of Natalie J. Guyden, Deceased, Appellee.**

No. 01–09–00523–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 2010.

Heather Joanna Forgey, Jeffrey Franklin Wood, Jones Carr McGoldrick, L.L.P., Dallas, TX, for Appellant.

Daniel D. Horowitz, Nick C. Nichols, Abraham, Watkins, Nichols, Sorrels & Friend, Matthew E. Coveler, Richard P. Hogan Jr., Hogan & Hogan, L.L.P., Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, HIGLEY, and SHARP.

## OPINION

JIM SHARP, Justice.

In its sole issue in this interlocutory appeal, appellant, TTHR, L.P. d/b/a Pres-

byterian Hospital of Denton, contends that the trial court abused its discretion when it denied appellant's motion to dismiss appellee Normell W. Guyden's[1] medical malpractice suit because Guyden did not file a sufficient expert report.[2] We affirm.

## BACKGROUND

After she nearly drowned, Natalie Guyden was taken to Presbyterian Hospital in Denton, Texas, and treated at the hospital for acute respiratory and renal failure, pneumonia, diabetes mellitus, and anoxic encephalopathy. After almost two months in the hospital, Natalie developed a urinary tract infection (UTI) which was treated with the antibiotic Levaquin. Despite laboratory tests indicating that Natalie's UTI was caused by a strain of *E. coli* bacteria resistant to Levaquin, no other antibiotic was substituted.

Notwithstanding her infection, on June 15, 2006, Natalie was transferred by ambulance to Courtyard Convalescent Center, a long-term-care facility in Houston. Although Presbyterian Hospital was required to prepare a memorandum of transfer informing Courtyard of all relevant diagnoses and treatments, Natalie's memorandum of transfer was silent as to both her UTI and her laboratory results. Notes from Courtyard documenting information that it received from a Presbyterian Hospital nurse also make no mention of Natalie's UTI. As a result, Natalie's infection continued unchecked and she died within a day of arriving at Courtyard. The cause of death was listed as urosepsis.

Guyden filed suit against Presbyterian Hospital, Courtyard, and doctors Christopher Lockhart and Jamal Mubarak. On September 25, 2008, Guyden timely served all four defendants with the required expert report and curriculum vitae of his expert, George M. Matuschak, M.D. Defendant Presbyterian Hospital filed objections to the sufficiency of Dr. Matuschak's expert report on October 21, 2008.[3] Six months later, on March 31, 2009, Presbyterian Hospital filed a motion to dismiss pursuant to section 74.351(b) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b) (Vernon Supp. 2009). After a hearing, the trial court overruled Presbyterian Hospi-

---

1. Guyden is suing individually and as heir to the Estate of Natalie J. Guyden, deceased.

2. If a health care liability claimant fails to serve an expert report within 120 days of filing suit, a defendant physician or health care provider may file a motion with the trial court requesting attorney's fees and dismissal of the claims. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b) (Vernon Supp. 2009); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(9) (Vernon 2008) (allowing appeal from interlocutory order that denies all or part of relief sought by motion pursuant to section 74.351(b)).

3. Neither Dr. Mubarak nor Courtyard objected to the sufficiency of Guyden's initial Chapter 74 expert report. Neither defendant is a party to this appeal.
     Dr. Lockhart also filed objections to Dr. Matuschak's expert report on October 16, 2008. After a non-evidentiary hearing on November 10, 2008, the trial court denied Dr. Lockhart's motion to dismiss and overruled his objections to Dr. Matuschak's report. On December 1, 2008, Dr. Lockhart filed an interlocutory appeal with this Court challenging the ruling. This Court heard arguments and on July 16, 2009 issued a memorandum opinion reversing the ruling and remanding the case for further proceedings. *Lockhart v. Guyden*, No. 01–08–00983–CV, 2009 WL 2050983, at *4 (Tex. App.-Houston [1st Dist.] July 16, 2009) (mem. op.). The trial court subsequently granted Guyden a 30–day extension of time to cure the report's deficiencies. On September 15, 2009, during the pendency of this appeal, Dr. Matuschak prepared and served an amended expert report. The amended report, however, is not part of this appeal.

tal's objections and denied the motion to dismiss. This interlocutory appeal ensued.

### DISCUSSION

Presbyterian Hospital asserts that the trial court abused its discretion when it determined that Dr. Matuschak's expert report satisfied the statutory requirements of Chapter 74 of the Texas Civil Practice and Remedies Code.

### I. Applicable Law

#### A. *Standard of Review*

We review a trial court's decision on a motion to dismiss a case for failure to comply with section 74.351 for an abuse of discretion. *See Am. Transitional Care Centers v. Palacios*, 46 S.W.3d 873, 877 (Tex.2001); TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(Vernon Supp. 2009). Although we defer to the trial court's factual determinations, we review questions of law de novo. *Rittmer v. Garza*, 65 S.W.3d 718, 722 (Tex.App.-Houston [14th Dist.] 2001, no pet.). To the extent that resolution of the issue before the trial court requires interpretation of the statute itself, we apply a de novo standard. *Buck v. Blum*, 130 S.W.3d 285, 290 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

#### B. *Chapter 74 Expert Report Requirements*

▮▮▮ Section 74.351 ostensibly serves as a 'gate-keeper' through which no medical negligence causes of action may proceed until the claimant has made a good-faith effort to demonstrate that at *least one expert* believes that a breach of the applicable standard of care caused the claimed injury. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351; *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex.2005). A report need not marshal all of the plaintiff's proof but it must include the expert's opinions on the three statutory elements: standard of care, breach, and causation. *See Palacios*, 46 S.W.3d at 878, 880; *Spitzer v. Berry*, 247 S.W.3d 747, 750 (Tex.App.-Tyler 2008, pet. denied) (quoting *Palacios*, 46 S.W.3d at 880) (stating "fair summary" is "something less than a full statement" of applicable standard of care, how it was breached, and how that breach caused injury).

▮▮▮ To constitute a good faith effort, the report must provide enough information to fulfill two purposes: (1) inform the defendant of the specific conduct that the plaintiff has called into question; and (2) provide a basis for the trial court to conclude that the claims have merit. *Palacios*, 46 S.W.3d at 879. A report that merely states the expert's conclusions as to the standard of care, breach, and causation does not fulfill these two purposes. *Id.* The expert must explain the basis for his statements and link his conclusions to the facts. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex.2002) (citing *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex.1999)). The trial court may not draw any inferences, but must rely exclusively on the information contained within the report's four corners. *See Palacios*, 46 S.W.3d at 878. In addition to setting forth the requisite criteria, a Chapter 74 report must also be authored by a qualified "expert." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6).

### II. Adequacy of Expert Report

Presbyterian Hospital argues that the expert report submitted by Guyden does not satisfy the requirements of section 74.351 because Dr. Matuschak, Guyden's expert, is not qualified to opine on causation and, even if he is qualified, his "conclusory statements" are not a "fair summary" of the standard of care, breach, or causation as to Presbyterian Hospital.

#### A. *Qualifications of Experts*

Presbyterian Hospital contends that Dr. Matuschak is unqualified to opine on causation because he is not licensed to practice medicine in Texas.[4] Section 74.351, entitled "Expert Report," defines an "Expert," "with respect to a person giving opinion testimony about the causal relationship between the injury, harm or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim" in a Chapter 74 report as "a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(5)(C). Under the Texas Rules of Evidence, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX.R. EVID. 702; *see also Broders v. Heise,* 924 S.W.2d 148, 153 (Tex.1996).

Although neither section 74.351(r)(5)(C) nor the Texas Rules of Evidence explicitly require a physician to be licensed in Texas, Presbyterian Hospital argues that we must nonetheless find Dr. Matuschak disqualified on this basis. According to Presbyterian Hospital, because the term "physician" is not defined in section 74.351(r)(5)(C) or anywhere else in the same subchapter, we must apply the general definition of "physician" as set forth in

Subchapter A of Chapter 74 (sections 74.001–.004). Subchapter A defines "physician" to mean, *inter alia,* "an individual *licensed to practice medicine in this state.*" TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(23)(A) (Vernon 2005) (emphasis added).

Section 74.001(a)(23) of Subchapter A, however, was not intended to define who would or would not be qualified to author an expert report under section 754.351, but rather which *type of defendants* were entitled to the protections and benefits of Chapter 74 as a whole.[5] Such an interpretation comports with the legislature's intended purpose for enacting Chapter 74— to protect *Texas physicians* and other health care providers from the state's "medical malpractice insurance crisis." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.001 historical and statutory notes [Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11, 2003 Tex. Gen. Laws 847, 884].

Moreover, the cases that Presbyterian Hospital cites in support of its argument that the general definition of "physician" set forth in section 74.001(a)(23) applies to section 74.351 are neither dispositive nor are they persuasive with regard to this issue. The courts in these cases either (1) were never presented with the question of whether a physician who was not licensed to practice medicine in Texas, but was licensed in another state, was qualified to opine as to causation in a Chapter 74

---

4. Presbyterian does not argue that Dr. Matuschak is not qualified to opine as to the applicable standard of care or any breaches thereof.

5. *See generally* TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(10) (Vernon 2005) (defining "health care"); *id.* at § 74.001(a)(13) (defining "health care liability claim" as "a cause of action against a health care provider or physician ..."); *id.* at § 74.001(a)(12)(A)(vii) (de-

fining "health care provider" as "a health care institution"); *id.* at § 74.001(a)(11)(G),(H) (defining "health care institution" as a hospital or hospital system); *id.* at § 74.001(a)(16),(17) (defining "hospital" and "hospital system"); *id.* at § 74.001(a)(23)(A) (defining "physician" as "an individual licensed to practice medicine in this state").

expert report[6] or (2) never reached the question because the purported expert was either licensed in Texas or not licensed at all.[7] In fact, some of these cases actually support the proposition that section 74.001(a)(23) was intended to define the type of claims subject to Chapter 74 and the scope of defendants entitled to the protections of the chapter. *See generally Pro Path Servs., L.L.P. v. Koch,* 192 S.W.3d 667, 672 (Tex.App.-Dallas 2006, pet. denied) (stating that laboratory entitled to benefits and protection of Chapter 74 because it met definition of "physician" set forth in section 74.001(a)(23)); *Hunsucker v. Fustok,* 238 S.W.3d 421, 429 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (determining that appellant's common-law fraud, breach of warranty, and tort claims were "health care liability claim[s]," and therefore, subject to requirements of section 74.351's predecessor statute).

◼ After considering Presbyterian Hospital's arguments and authorities, we decline to read a Texas licensure requirement into section 74.351(r)(5)(C) by way of section 74.001(a)(23).[8] This result comports with the holdings of three of our sister courts that determined—albeit for other reasons—that a physician need not be licensed in Texas in order to author a Chapter 74 expert report. *See Kelly v. Rendon,* 255 S.W.3d 665, 675 (Tex.App.-Houston [14th Dist.] 2008, no pet.); *Springer v. Johnson,* 280 S.W.3d 322, 327–30 (Tex.App.-Amarillo 2008, no pet.); *Tenet Hosps. Ltd. v. Boada,* 304 S.W.3d 528, 538–39 (Tex.App.-El Paso 2009, pet. denied). Although we do not adopt the analysis of our sister courts, we nonetheless agree with their ultimate conclusions.

◼ When no applicable statutory definition is provided, such as here, we accept the ordinary meaning of words used unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results. *City of Rockwall v. Hughes,* 246 S.W.3d 621, 625–26 (Tex. 2008). The term "physician," as it is ordinarily used, refers to a person who is licensed to practice medicine. *See* COMPACT OXFORD ENGLISH DICTIONARY 1332 (2d ed. 1993). It does not impose any geographical limits. This interpretation is in accord with section 74.401, entitled "Qualifications of Expert Witness in Suit Against a Physician," that is set out in Subchapter I, entitled "Expert Witnesses." In regard to "expert witnesses," section 74.401 de-

---

6. *See Pro Path Servs., L.L.P. v. Koch,* 192 S.W.3d 667, 672 (Tex.App.-Dallas 2006, pet. denied) (stating that laboratory entitled to benefits and protection of Chapter 74 because it met definition of "physician" set forth in section 74.001(a)(23)); *Hunsucker v. Fustok,* 238 S.W.3d 421, 429 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (determining that appellant's common-law fraud, breach of warranty, and tort claims were "health care liability claim[s]" and affirming dismissal of claims for failure to submit expert report; court was not presented with, and did not address, question of whether expert was qualified to opine as to causation in a Chapter 74 expert report).

7. *See Foster v. Zavala,* 214 S.W.3d 106, 112 (Tex.App.-Eastland 2006, pet. denied) (purported expert licensed to practice medicine in Texas); *Li v. Billingsley,* No. 05–08–00436–CV, 2009 WL 242523, at *2 (Tex.App.-Dallas Feb. 3, 2009, no pet.) (mem. op.) (purported expert—a chiropractor—was not licensed to practice medicine anywhere in United States); *Azle Manor, Inc. v. Vaden,* No. 02–08–00115–CV, 2008 WL 4831408, at *9 (Tex.App.-Fort Worth Nov. 6, 2008, no pet.) (mem. op.) (purported expert licensed to practice medicine in Texas).

8. Section 74.401(g)(1) also defines the term "physician." This definition, however, only applies to Subchapter I, and is likewise inapplicable to Subchapter H's section 74.351(r)(5)(C). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.401(g)(1) (defining "physician" for purposes of "this subchapter").

fines "physician" as a person who is "licensed to practice medicine in one or more states in the United States" or a "graduate of a medical school...." Tex. Civ. Prac. & Rem.Code Ann. § 74.401(g) (Vernon 2005).

Here, Dr. Matuschak's report and curriculum vitae reflect that he is a licensed physician in good standing in the States of Pennsylvania and Missouri who has been practicing medicine since 1977. He is a board certified internist with subspecialty board certifications in Critical Care Medicine and Pulmonary Disease. Dr. Matuschak has also provided medical evaluation, care, and treatment to acute and chronically ill patients such as Natalie with urinary tract infections and urosepsis, and he has "managed and/or directed the management of hundreds of patients with medical conditions similar to the circumstances seen in Natalie Guyden's case." Dr. Matuschak's report and curriculum vitae also state that Dr. Matuschak has experience assisting in and supervising the transfer of such patients to long-term-care facilities, and has knowledge regarding the documentation required for such transfers.

Thus, we conclude that Dr. Matuschak's qualifications, as set forth in his report and his curriculum vitae, sufficiently qualify him to opine on the proper treatment and care of acute and chronically ill patients such as Natalie who develop urinary tract infections and the complications that flow from the failure to properly manage or treat such infections. Accordingly, we conclude that the trial court did not abuse its discretion in finding Dr. Matuschak qualified by knowledge, skill, experience, training, or education to opine as to causation, and that such testimony would assist the trier of fact to understand the evidence or to determine a fact in issue. Because Dr. Matuschak is licensed to practice medicine and he is otherwise qualified to render opinions on causation under Texas

Rule of Evidence 702, the trial court did not abuse its discretion in finding him qualified to opine as to causation in an expert report under section 74.351(r)(5)(C).

We overrule Presbyterian Hospital's first argument.

### B. Standard of Care, Breach, and Causation

■ After devoting the lion's share of its appellate brief to challenging Dr. Matuschak's qualifications, Presbyterian Hospital perfunctorily argues that Dr. Matuschak's report is deficient because it does not provide a "fair summary" of his opinions as to standard of care, breach, and causation. Specifically, Presbyterian Hospital argues that the report merely states that the hospital "should have communicated 'all relevant diagnoses and treatments,'" without identifying what Presbyterian Hospital should have done differently or "what makes one diagnoses or treatment 'relevant,' and another not 'relevant.'" See Palacios, 46 S.W.3d at 880 ("Identifying the standard of care is critical: Whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently.") With regard to breach and causation, Presbyterian Hospital also argues that Dr. Matuschak's statement that the hospital failed to "effectively communicate relevant diagnoses and treatments" and that "but for the negligence of the Hospital ... Natalie Guyden would not have suffered from and died from urosepsis" is "completely conclusory" because it is not supported by any facts.

Presbyterian Hospital, however, has taken Dr. Matuschak's statements out of context and attempted to analyze these statements in a vacuum, rather than looking to the report as a whole. In his report, Dr. Matuschak states that a urine specimen

was collected from Natalie on June 12, 2006 and sent to Presbyterian Hospital's laboratory for testing, including culture and sensitivity (C & S) studies. The C & S report prepared by the laboratory indicated that Natalie's UTI was caused by a Levaquin-resistant pathogen. This information was available to the Presbyterian Hospital prior to Natalie's discharge and transfer to Courtyard on June 15, 2006. Despite the laboratory results and the availability of other antibiotics, Natalie continued to be treated with Levaquin. Dr. Matuschak states that in his professional opinion, had Natalie been taken off Levaquin and treated with "an effective antibiotic based upon the urine C & S as detailed above, Natalie would not have suffered and died from urosepsis."

With respect to the standard of care applicable to Presbyterian Hospital, Dr. Matuschak states in pertinent part:

> The standards of healthcare/nursing care dictate that an [sic] Presbyterian Hospital of Denton via its employees or agents, administrators and/or nurses *should have* thoroughly communicated with the accepting long-term care facility about Natalie Guyden's UTI under treatment and pending laboratory results if any. The standards of healthcare/nursing care dictate that Presbyterian Hospital of Denton via its employees or agents, administrators and/or nurses *should have* notified the Center of Natalie's UTI under treatment and pending laboratory results if any via the Memorandum of Transfer. The standards of healthcare/nursing care dictate that Presbyterian Hospital of Denton via its employees or agents, administrators and/or nurses *should have* notified the Center of Natalie's UTI under treatment and pending laboratory results if any via the verbal transfer communications between

Nurse Hanning that occurred on June 15, 2006.

(Emphasis added.)

Having set forth the applicable standard of care, Dr. Matuschak goes on to state that:

> In contrast, the Memorandum of Transfer for the Hospital does not contain any information about Natalie's UTI nor any information about any pending diagnostic studies, if any were pending, concerning the UTI. Moreover, the notes from Courtyard documenting the information received from the Hospital via Nurse Hanning on June 15, 2006 does not contain any information about Natalie's UTI nor any information about any pending diagnostic studies, if any, concerning the UTI. Thus, it is my medical professional opinion that the Hospital's healthcare/nursing care with respect to their failure to communicate relevant information about Natalie's evaluation and treatment for a UTI represents healthcare/nursing care negligence.

With regard to causation, Dr. Matuschak states:

> Furthermore, based upon my qualifications discussed above and in my CV, the medical science discussed in the "general section" above, the medical facts summarized above, that but for the negligence of the Hospital as set forth in this section, Natalie Guyden would not have suffered from and died from urosepsis. That is, more likely than not had the relevant medical information been communicated to the Center by the Hospital the Center would have timely and appropriately responded to the acute change in Natalie's condition on June 15th and 16th 2006 so that timely and appropriate treatment of her urosepsis could have ensued. Thus, it is my professional opinion to a reasonable degree

of medical probability that Presbyterian Hospital of Denton's negligent care was a proximate cause of Natalie Guyden's injuries from a urinary tract infection and her death from urosepsis.

Dr. Matuschak's report identifies three specific actions that the applicable standard of care required, but Presbyterian failed to do, and sets forth sufficient facts linking Presbyterian Hospital's purported breaches to the alleged injury. *See Bowie Mem'l Hosp.*, 79 S.W.3d at 52 (requiring expert to explain basis of his statements regarding causation and link his conclusions to facts). Dr. Matuschak's statements also make it clear that he has informed Presbyterian Hospital of the specific conduct that Guyden called into question—the hospital's failure to inform Courtyard of Natalie's UTI diagnosis and treatment, and pending laboratory results, if any—and he has provided sufficient information for the trial court to conclude that Guyden's claims have merit with respect to Presbyterian. *See Palacios*, 46 S.W.3d at 879 (stating expert report must inform defendant of specific conduct that plaintiff has called into question and provide basis for trial court to conclude that claims have merit).

Therefore, keeping in mind that section 74.351 expert reports are a preliminary method to show that a plaintiff has a viable cause of action that is not frivolous or without expert support, we hold that the trial court acted within its discretion in concluding that Dr. Matuschak's report represents an objective good faith effort to identify and set forth how Presbyterian Hospital breached the applicable standards of care and the causal relationship between those failures and the injuries claimed.

We overrule Presbyterian Hospital's second, third, and fourth arguments.

## CONCLUSION

We affirm the trial court's order denying Presbyterian Hospital's motion to dismiss.