**Opinion issued March 7, 2013**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-12-00751-CV

—————————————

**DAVID GELBER, M.D., Appellant**

**V.**

**ROBERTA HAMILTON, Appellee**

---

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-40346**

---

## MEMORANDUM OPINION

Appellee, Roberta Hamilton, sued appellant, David Gelber, M.D., for medical malpractice pursuant to Texas Civil Practice and Remedies Code chapter 74. Hamilton served Dr. Gelber with an expert report, and Dr. Gelber moved to dismiss Hamilton's claim for failure to serve a timely, sufficient expert report. The

trial court denied Dr. Gelber's motion to dismiss. In three issues, Dr. Gelber asserts that the trial court erred in denying his motion to dismiss, arguing that Hamilton's expert report failed (1) to set out an applicable standard of care; (2) to state a breach of a standard of care; and (3) to link Hamilton's damages to any specific breach of an applicable standard of care.

We affirm.

## Background

On July 7, 2011, Hamilton sued Dr. Gelber for medical malpractice. She alleged that, on April 23, 2009, Dr. Gelber examined her based on her complaints of abdominal pain and "recommended the continuation of 'nonoperative therapy.'" Hamilton asserted that Dr. Gelber ultimately performed "a laparoscopic cholecystectomy," or a laparoscopic surgery to remove Hamilton's gallbladder, on April 26, 2009. Hamilton alleged that, following this surgery, she "developed swelling at the incision site and widespread infection with stool output from the abdominal wall. Exploratory surgery was performed on May 11, 2009 revealing an entercutaneous fistula." Hamilton asserted that Dr. Gelber provided medical care to her until approximately September 30, 2010. Hamilton further alleged that she "never recovered" and "continue[d] to battle infection," had suffered multiple surgeries, and had been given a colostomy bag as a result of Dr. Gelber's negligence in treating her. Specifically, she alleged the following negligent acts by

2

Dr. Gelber: "failure to conduct appropriate pre-surgical testing and evaluation"; "failure to exhaust nonoperative therapy"; "conducting a laparoscopic procedure when open surgery was the appropriate technique, given Ms. Hamilton's prior medical history" and "failing to convert to an open technique" when it "became clear that anatomical variants demanded the ability to observe the surgical area in greater detail"; "failure to provide adequate post-surgical care," including "appropriate post-surgical testing and evaluation"; "failure to properly repair the fistula upon obtaining diagnosis"; and "failure to provide appropriate after care to manage the injuries caused by the surgical errors."

As required by Civil Practice and Remedies Code chapter 74, Hamilton served Dr. Gelber with the expert report of Dr. Arnold Seid on November 3, 2011. In this report, Dr. Seid, a general surgeon and clinical professor of surgery at the University of Southern California School of Medicine, detailed his credentials and the materials he consulted in producing his report.

Dr. Seid summarized Hamilton's course of treatment, beginning with her initial hospitalization and Dr. Gelber's removal of her gallbladder. Under the heading "Post operatively," Dr. Seid summarized the following facts: Dr. Gelber performed a "laparoscopic cholecystectomy"; Hamilton "had previously undergone colon resection, and while the identification of significant adhesions were noted, there is no indication that a modification to an 'open' procedure was necessary or

3

considered"; post operatively, Hamilton "had consistent and multiple complaints and symptoms including abdominal pain, fever, tachycardia, tachypnea, and hypoxia" and "her chest x-ray consistently showed evidence of bilateral basilar atelectasis"; Hamilton "was discharged before these problems were resolved or adequately evaluated"; and Hamilton was readmitted two days after her original discharge "with an enterocutaneous fistula and abdominal wall abscess which required reoperation."

Regarding the standard of care, Dr. Seid stated:

The standard of care for a cholecystectomy requires that a surgeon avoid causing careless or avoidable injury to the multiple organs and anatomical areas that are encountered during the surgery; and that when injury occurs, if at all possible, the injury be identified and repaired prior to the conclusion of the procedure. Additionally, when problems occur identifying anatomical areas, or from adhesions, or other surgical difficulties, the standard of care requires that the laparoscopic procedure be converted to an 'open,' more invasive procedure.

Dr. Seid noted that not all surgical injuries "are caused by medical care that falls below the standard of care" and that surgical injuries are not always immediately identifiable. He went on to state,

Given the potentially life threatening consequences posed by these [surgically caused] injuries, particularly when they are not repaired at the earliest possible moment, the standard of care requires that careful attention be paid to the patient postoperatively, and that when symptoms like those suffered by Ms. Hamilton, including abdominal pain, fever, tachycardia, tachypnea, and hypoxia occur, then bowel, bile duct and other ruptures or injuries be thoroughly investigated and ruled out.

4

Dr. Seid further opined, "Faced with clear warning signals, the standard of care required that all reasonable measure[s] be taken to identify [Hamilton's] problem" and that "the surgeon has the duty and responsibility to detect and repair surgical injuries and complications." His report stated, "A reasonable surgeon would have conducted additional testing, including a CT scan, or whatever tests were necessary, including [an] exploratory procedure, if necessary; and certainly would have kept her for observation on the date of discharge, at a bare minimum."

Dr. Seid opined that Dr. Gelber's care "unquestionably fell below the standard of care regarding his post operative care for Ms. Hamilton." Dr. Seid identified the following failures: despite "numerous signs and symptoms of ongoing intra-abdominal sepsis" and "fever and abdominal pain and hypoxia which were far beyond what would be expected in an uncomplicated laparoscopic cholecystectomy, Dr. Gelber failed to take the steps or employ the diagnostic procedures that would have been taken or employed by a surgeon exercising ordinary care"; the failure "to conduct an appropriate evaluation, that was necessary to rule out an intra-abdominal source for [Hamilton's] complaints" was negligent; "diagnostic procedures" such as a CT scan or upright abdominal x-ray "could and should have been utilized"; and Hamilton should not have been released from the hospital on May 5, 2009.

5

Dr. Seid concluded, "Had [Hamilton] been properly evaluated, the surgical injury caused by Dr. Gelber would have, based on a reasonable degree of medical probability, been identified prior to the terrible injuries she ultimately sustained." He stated:

> Dr. Gelber's failure to timely identify the perforation caused by his surgical technique, and the failure to perform an appropriate diagnostic work up, fell below the standard of care. His failure to identify, evaluate, diagnose, and repair the perforation suffered during surgery, in a timely manner, after presentation of symptomology that was at a minimum significant enough to cause serious concerns, was a direct and proximate cause of the injuries suffered thereafter by Ms. Hamilton, including her subsequent abdominal rupture, abdominal pain, nausea and formation of an enterocutaneous fistula and abdominal wall abscess, VAC treatment, subsequent hospitalizations and operations, medical bills, and grave disabilities. The delay in diagnosis was the proximate cause of Ms. Hamilton's ongoing abdominal pain, peritonitis, abdominal wall abscess, enterocutaneous fistula, post-surgical pain and discomfort, loss of abdominal wall musculature and continued abdominal problems.

Dr. Seid also stated that he had "potential concerns regarding Dr. Gelber's surgical method and technique," but he did "not have sufficient information at this time to declare with reasonable medical probability that his surgical technique fell below the standard of care." He indicated that additional information might cause him to alter his opinions regarding this aspect of the care provided by Dr. Gelber.

Dr. Gelber filed "objections to the sufficiency of [Hamilton's] expert report," arguing that it failed to meet the requirements of Civil Practice and Remedies Code section 74.351. Dr. Gelber argued that the expert report failed "to

demonstrate a good faith effort to provide [him] with notice of the basis of [Hamilton's] claims" because it did not establish an appropriate standard of care, a "concrete" breach of that standard, or the causal relationship between the breach and any harm or damages claimed. Dr. Gelber moved to dismiss Hamilton's lawsuit based on his objections to Dr. Seid's expert report.

On August 16, 2012, the trial court denied Dr. Gelber's motion to dismiss, and this interlocutory appeal followed.[1]

## Standard of Review

When, as here, a plaintiff files a timely expert report as required by Civil Practice and Remedies Code section 74.351(a), the defendant-physician may file a motion objecting to the sufficiency of the report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (Vernon Supp. 2012) (requiring plaintiff in health care liability claim to serve expert report on each defendant within 120 days of filing petition and providing that each defendant "must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served. . . ."); *Hillery v. Kyle*, 371 S.W.3d 482, 489 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The trial court shall grant a motion challenging the adequacy of an expert report only if it appears to the court that the report "does not represent

---

[1] Texas Civil Practice and Remedies Code section 51.014(a)(9) allows interlocutory appeal in these circumstances. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (Vernon Supp. 2012).

7

an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*); *Hillery*, 371 S.W.3d at 489. Subsection 74.351(r)(6) defines "expert report" as "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician . . . failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001); *Hillery*, 371 S.W.3d at 489.

The expert report need not marshal all of the plaintiff's proof, but it must include the expert's opinion on the three statutory elements: standard of care, breach, and causation. *Palacios*, 46 S.W.3d at 878; *Hillery*, 371 S.W.3d at 489. To constitute a "good faith effort" to comply with the statute, the expert report must provide enough information to fulfill two purposes: (1) the report must inform the defendant of the specific conduct that the plaintiff has called into question; and (2) the report must provide a basis for the trial court to conclude that the claims have merit. *Palacios*, 46 S.W.3d at 879; *Hillery*, 371 S.W.3d at 489. Thus, section 74.351(a)'s expert report requirement serves as a "gate-keeper," establishing "a threshold over which a claimant must proceed to continue a lawsuit." *See Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005) (per curiam);

*TTHR, L.P. v Guyden*, 326 S.W.3d 316, 319 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see also Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011) ("The purpose of the expert report requirement is to deter frivolous claims, not to dispose of claims regardless of their merits."). Because it is a preliminary threshold, the expert report is not admissible in and shall not be used during deposition, trial or other proceedings, and once the requirement is met and the gate-keeping purpose has been achieved, the claimant's case may proceed, including full discovery. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(k), (s), (t).

An expert report that merely states the expert's conclusions regarding the three statutory elements does not fulfill the two purposes of the expert report. *Palacios*, 46 S.W.3d at 879; *Hillery*, 371 S.W.3d at 489; *see also Scoresby*, 346 S.W.3d at 556 ("No particular words or formality or required [in the expert report], but bare conclusions will not suffice."). In the report, the expert must explain the basis for his statements and must link his ultimate conclusions to the facts of the particular case. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam); *Hillery*, 371 S.W.3d at 489; *see also Jelinek v. Casas*, 328 S.W.3d 526, 539–40 (Tex. 2010) ("[T]he expert report must . . . explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented."). In assessing the sufficiency of the report, the trial court may not draw any inferences;

9

instead, it must exclusively rely upon the information contained within the four corners of the report. *Wright*, 79 S.W.3d at 52; *Hillery*, 371 S.W.3d at 489.

We review a trial court's ruling on a section 74.351 motion to dismiss for an abuse of discretion. *Palacios*, 46 S.W.3d at 875. A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to any guiding rules or principles. *Wright*, 79 S.W.3d at 52. In reviewing the ruling on a motion to dismiss, we may not substitute our judgment for that of the trial court. *Id.* Mere disagreement with the trial court's decision is insufficient to constitute an abuse of discretion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

## Sufficiency of Expert Report

Dr. Gelber argues that the trial court abused its discretion in denying his motion to dismiss because Hamilton's expert report, prepared by Dr. Seid, did not constitute a good faith effort to comply with the statute because it (1) failed to set out an applicable standard of care; (2) failed to state a breach of a standard of care; and (3) failed to link Hamilton's damages to any specific breach of an applicable standard of care. We disagree.

Dr. Seid's report stated that the "standard of care requires that careful attention be paid to the patient postoperatively, and that when symptoms like those suffered by Ms. Hamilton . . . occur, then bowel and bile duct and other ruptures or

injuries be thoroughly investigated and ruled out." Dr. Seid further stated that "the surgeon has the duty and responsibility to detect and repair surgical injuries and complications" and that "a reasonable surgeon would have conducted additional testing, including a CT scan, or whatever tests were necessary, including [an] exploratory procedure, if necessary; and certainly would have kept [Hamilton] for observation on the date of discharge, at a bare minimum."

Dr. Gelber argues that Dr. Seid's articulation of the standard for post-operative care was ambiguous and that Dr. Seid's report failed to link any of the standards of care to Dr. Gelber; however, the expert report clearly states that it was Dr. Gelber's duty, as the surgeon, to detect and repair surgical complications by employing appropriate testing and other post-surgical care as enumerated in the report. Thus, Dr. Seid set out the appropriate standard of care for the post-operative care of patients like Hamilton. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *Palacios*, 46 S.W.3d at 879; *Hillery*, 371 S.W.3d at 489.

On the element of breach of that standard, Dr. Seid opined that Dr. Gelber's post-operative care for Hamilton "unquestionably" fell below the standard of care. Dr. Seid identified the following failures: despite "numerous signs and symptoms of ongoing intra-abdominal sepsis" and "fever and abdominal pain and hypoxia which were far beyond what would be expected in an uncomplicated laparoscopic cholecystectomy, Dr. Gelber failed to take the steps or employ the diagnostic

11

procedures that would have been taken or employed by a surgeon exercising ordinary care"; the failure "to conduct an appropriate evaluation, that was necessary to rule out an intra-abdominal source for [Hamilton's] complaints" was negligent; "diagnostic procedures" such as a CT scan or upright abdominal x-ray "could and should have been utilized"; Hamilton should not have been released from the hospital on May 5, 2009; and Dr. Gelber's "failure to timely identify the perforation caused by his surgical technique, and the failure to perform an appropriate diagnostic work up, fell below the standard of care." Therefore, we likewise conclude that the expert report contained "a fair summary" of Dr. Seid's opinion of the manner in which the care rendered by Dr. Gelber failed to meet the standard of care. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *Palacios*, 46 S.W.3d at 879; *Hillery*, 371 S.W.3d at 489.

Finally, Dr. Seid identified a causal connection between Dr. Gelber's failures and Hamilton's injuries. Dr. Seid stated that, had Dr. Gelber properly evaluated Hamilton, he could have identified the surgical injury "prior to the terrible injuries she ultimately sustained." He further opined that Dr. Gelber's failure to identify and repair the perforation Hamilton suffered during the surgery in timely manner and the delay in the diagnosis was a direct and proximate cause of Hamilton's injuries, including her post-operative abdominal rupture, abdominal pain, nausea, the formation of a fistula and abdominal wall abscess, multiple

12

follow-up procedures, and "continued abdominal problems." Thus, Dr. Seid's report provided a fair summary of his opinion as to the causal relationship between Dr. Gelber's failures and Hamilton's injuries. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *Palacios*, 46 S.W.3d at 879; *Hillery*, 371 S.W.3d at 489.

Dr. Gelber argues that this case is similar to *Jelinek v. Casas*. In *Jelinek*, the supreme court concluded that the expert report was conclusory on the issue of causation because it offered "no more than a bare assertion that Dr. Jelinek's breach resulted in increased pain and suffering and a prolonged hospital stay." 328 S.W.3d at 540. Here, however, Dr. Seid's report satisfied the requirement that the expert report must "explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented." *See id.* at 539–40. As we discussed above, Dr. Seid's report stated the alleged breach—failure to diagnose and treat Hamilton's bowel perforation despite "numerous signs and symptoms of ongoing intra-abdominal sepsis" and "fever and abdominal pain and hypoxia which were far beyond what would be expected in an uncomplicated laparoscopic cholecystectomy"—and how the breach caused the injury—Dr. Gelber's failures left Hamilton's perforation untreated for several days and led to multiple complications requiring several subsequent procedures to treat.

Dr. Gelber further complains that Dr. Seid's inclusion of the standard of care regarding surgical technique—that a surgeon "avoid causing careless or avoidable

13

injury"—and statements that appear to question the method Dr. Gelber used in performing the removal of Hamilton's gallbladder are contradictory and inappropriate. Dr. Seid opined that he had "potential concerns regarding Dr. Gelber's surgical method and technique" but did "not have sufficient information" at the time he made the report "to declare with reasonable medical probability that [Dr. Gelber's] surgical technique fell below the standard of care." Dr. Seid observed that surgical injuries are known to happen even when the surgeon's technique has not fallen below the standard of care. Thus, Dr. Seid's report provides that Dr. Gelber caused a surgical injury, but Dr. Seid could not say, based on the information he had at the time he filed the report, whether that injury was caused by actions that fell below the standard of care or by surgical error that did not fall below the standard of care. Thus, there was no "contradiction" in Dr. Seid's report, as Dr. Gelber alleges. Furthermore, the statements regarding Dr. Gelber's surgical performance did not preclude Dr. Seid from opining that Dr. Gelber's post-surgical care was deficient, regardless of the cause of Hamilton's surgical injury. *See Baylor Coll. of Med. v. Pokluda*, 283 S.W.3d 110, 123 n.3 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (declining to address adequacy of report concerning pre-surgery breaches of standard of care when report adequately addressed breaches occurring during surgery); *Schrapps v. Pham*, No. 09-12-00080-CV, 2012 WL 4017768, at *4 (Tex. App.—Beaumont Sept. 13, 2012, no

14

pet. h.) (mem. op.) ("The expert report noted that Schrapps was unable to identify the source of the perforation. As discovery is conducted, new information regarding the perforation, and when it occurred, may be learned. The question at this stage is not one of summary judgment, but whether the report represents a good faith effort to comply with the statutory requirements."); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(s) (staying discovery until claimant has served expert report and curriculum vitae as required by Subsection (a)).

We conclude that Dr. Seid's expert report did more than merely state his conclusions; rather, Dr. Seid explained the basis for his statements and linked his ultimate conclusions to the facts of the case. *See Wright*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 879; *Hillery*, 371 S.W.3d at 491. The report informed Dr. Gelber of the specific conduct that Hamilton has called into question—namely, his enumerated failures in providing post-operative care—and provided a basis for the trial court to conclude that Hamilton's claims have merit. *See Palacios*, 46 S.W.3d at 879; *Hillery*, 371 S.W.3d at 491; *see also Murphy*, 167 S.W.3d at 838 (stating expert report requirement establishes "a threshold over which a claimant must proceed to continue a lawsuit"); *Guyden*, 326 S.W.3d at 319 (holding that expert report requirement serves as "gate-keeper"). Thus, Dr. Seid's report constituted a "good faith effort" to comply with the statute. *See Palacios*, 46 S.W.3d at 879; *Hillery*, 371 S.W.3d at 489.

We overrule Dr. Gelber's first, second, and third issues.

## Conclusion

We affirm the trial court's order denying Dr. Gelber's motion to dismiss.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.