**CERTIFIED EMS, INC. d/b/a CPnS Staffing, Appellant,**

v.

**Cherie POTTS, Appellee.**

**No. 01–10–00106–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

May 19, 2011.

Debra Ibarra Mayfield, Nathan Montgomery Rymer, Rymer, Moore, Jackson & Echols, P.C., Erin E. Lunceford, Sprott, Rigby, Newsom, Robbins, Lunceford, Les Hardin, Houston, for Appellant.

John T. McDowell, Clinton E. Wells, McDowell Wells, L.L.P., Houston, Vincent L. Marable, III, Paul Webb, P.C., Wharton, for Appellee.

Panel consists of Justices JENNINGS, ALCALA, and SHARP.

## OPINION ON REHEARING

ELSA ALCALA, Justice.

In this interlocutory appeal, appellant, Certified EMS, Inc. d/b/a/ CPnS Staffing ("Certified EMS"), challenges the trial court's order denying its motion to dismiss the health care liability claim of appellee, Cherie Potts. Certified EMS has filed a motion for en banc reconsideration, and Potts has filed a response to that motion. We construe Certified EMS's motion as both a motion for rehearing and a motion for en banc reconsideration. *See Brookshire Bros., Inc. v. Smith,* 176 S.W.3d 30, 39 (Tex.App.-Houston [1st Dist.] 2004, pet. denied). We withdraw our January 27, 2011 opinion and judgment and replace them with this opinion and judgment; the motion for en banc reconsideration is, therefore, moot. *See Richardson–Eagle, Inc. v. William M. Mercer, Inc.,* 213 S.W.3d 469, 472 (Tex.App.-Houston [1st Dist.] 2006, pet. denied).

Potts sued Certified EMS alleging that it was directly and vicariously liable for an assault by one of its employees. On appeal, Certified EMS contends that the trial court erred by (1) granting Potts an extension of time to cure deficiencies in her expert reports because the original reports served by Potts do not qualify as expert reports and, therefore, the first motion to dismiss should have been granted, and (2) denying Certified EMS's second motion to dismiss based on deficiencies in the ulti-

mate reports filed by Potts. We conclude that we lack jurisdiction over Certified EMS's appeal of the first motion to dismiss, which concerns Potts's reports that were filed before the court granted an extension of time to file corrected reports. Although the expert reports ultimately filed by Potts were inadequate as to her pleaded theories for direct liability, we conclude the trial court properly denied Certified EMS's motion to dismiss because Potts's expert report was adequate for vicarious liability. We affirm the order of the trial court.

## Background

Potts was admitted to Christus St. Catherine's Hospital in Katy, Texas, in November 2008 after experiencing complications from a recurring kidney infection. Potts alleged that, during her stay at Christus, Les Hardin, a male nurse, asked her and her husband several intimate questions concerning her sexual practices, which she or her husband answered. She further alleged that, on the day following the questioning, Hardin returned to her room in the late evening. She explained that Hardin, acting under the false pretense of performing a normal examination, proceeded to examine her in a manner that left her breasts exposed and that he touched her breasts and other areas of her body in an inappropriate and unwelcome manner.

Potts reported Hardin's conduct to the nursing risk-management supervisor. Eventually, it was disclosed that Hardin was not a regular employee of the hospital but was temporarily working at the hospital as an employee of Certified EMS, a nurse staffing agency. After the incident, Potts complained of anxiety and panic attacks. She eventually brought suit against Certified EMS asserting that it was vicariously liable for Hardin's conduct under a respondeat superior theory and directly liable for its own negligence in training and supervising Hardin.

Potts timely served two reports that purported to be expert reports under Chapter 74 of the Texas Civil Practice and Remedies Code. The first report, by Nurse Foster, stated that Hardin's conduct was evidence of substandard nursing practice by Hardin, whom she identified as an employee of a "Temporary Nursing Agency/Service, Name of Agency or Director are unknown at this time." The second report, by Dr. Kit Harrison, Ph.D., stated that Potts is suffering psychological injuries due to assault. Asserting the reports were statutorily insufficient so that they effectively constituted no report, Certified EMS filed its first motion to dismiss, claiming that Nurse Foster's and Dr. Harrison's expert reports do not identify Certified EMS by name, state the standard of care applicable to Certified EMS, describe how Certified EMS's conduct fell below that standard of care, and failed to show how Certified EMS's conduct or omissions caused Potts's injury. The motion also asserts that the reports are conclusory concerning a description of the standard of care applicable to Nurse Hardin, how Nurse Hardin's conduct fell below that standard of care, and how that conduct caused Potts's injury. Finally, as to causation, the motion asserts that the reports fail to show that Nurse Foster and Dr. Harrison are qualified to offer opinions on causation because neither is a physician.

The trial court denied Certified EMS's motion to dismiss and granted Potts a 30–day extension to amend or supplement her reports. Before the expiration of the 30–day extension, Potts filed a supplemental report from Nurse Foster and a report with curriculum vitae from a new expert, Dr. Milton Altschuler, M.D., responding to Certified EMS's objections concerning

causation. Certified EMS timely filed a second motion to dismiss, which the trial court subsequently denied. The second motion to dismiss repeats the challenges made earlier in its first motion to dismiss. The second motion also asserts that Dr. Altschuler's report was not timely filed and constitutes "no report" because it fails to specify Certified EMS by name or to implicate Certified EMS's specific conduct. Additionally, it asserts that Dr. Altschuler is not qualified because his report and curriculum vitae do not mention that he is actively practicing medicine or otherwise qualified to opine on causation in the present case. Finally, the second motion asserts that Dr. Altschuler's report is conclusory and insufficient as to proximate causation.

Viewed together, the expert reports implicate Hardin's conduct by explaining that he touched Potts's body in a sexually inappropriate manner when he was caring for her as her nurse while she was in a hospital. The expert reports' description of Hardin as an employee of Certified EMS support Potts's theory that Certified EMS is vicariously liable under the doctrine of respondeat superior. The expert reports, however, do not specifically address how Certified EMS might be directly liable for its own conduct.

## Standard of Review

We review the trial court's rulings concerning expert reports for abuse of discretion. *Walker v. Gutierrez,* 111 S.W.3d 56, 62 (Tex.2003); *Am. Transitional Care Ctrs. v. Palacios,* 46 S.W.3d 873, 877 (Tex. 2001). A trial court abuses its discretion if it acts arbitrarily or unreasonably without reference to any guiding rules or principles. *See Walker,* 111 S.W.3d at 62. Statutory construction, however, is a legal question that we review de novo. *HCBeck,*

*Ltd. v. Rice,* 284 S.W.3d 349, 352 (Tex. 2009).

## First Motion to Dismiss

In its first four issues, Certified EMS contends that the trial court abused its discretion by granting an extension of time to cure deficiencies because the initial reports filed by Potts were so inadequate as to constitute no expert report. In light of the trial court's extension of time to cure deficiencies in the original reports filed by Potts, we conclude we lack jurisdiction over Certified EMS's first four issues, in which it challenges the deficiencies in her original reports.

### A. Applicable Law

Pursuant to section 74.351, medical-malpractice plaintiffs must serve each defendant physician and health care provider with an expert report or voluntarily nonsuit the action. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (West Supp.2010). If a claimant timely furnishes an expert report, a defendant may file a motion challenging the report's adequacy. *Id.* The trial court shall grant the motion only if it appears, after a hearing, that the report does not represent a good faith effort to comply with the statutory definition of an expert report. *See id.* § 74.351(*l*). " 'Expert report' means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6); *Jelinek v. Casas,* 328 S.W.3d 526, 540 (Tex. 2010) ("[T]he plaintiff need not marshal all of his proof in the [expert] report, but he must include sufficient detail to allow the trial court to determine if the claim has

merit."); *Palacios,* 46 S.W.3d at 877–78 (expert report must include expert's opinions on three statutory elements—standard of care, breach, and causation); *Gray v. CHCA Bayshore, L.P.,* 189 S.W.3d 855, 859 (Tex.App.-Houston [1st Dist.] 2006, no pet.). "If an expert report has not been served ... because elements of the report are found deficient, the court may grant one 30–day extension to the claimant in order to cure the deficiency." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(c).

Section 51.014(a)(9) of the Texas Civil Practice and Remedies Code authorizes an interlocutory appeal from an order that denies all or part of the relief sought by a motion under section 74.351(b). TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(9) (West 2006). If no report is filed by the deadline, a defendant may properly appeal an order denying its motion to dismiss. *Morris v. Umberson,* 312 S.W.3d 763, 766 (Tex.App.-Houston [1st Dist.] 2009, pet. denied). When a report has been timely served, however, a defendant may not appeal from an order denying a motion to dismiss if the trial court also grants an extension under section 74.351(c) of the Texas Civil Practice and Remedies Code. *Id.* (citing TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(9)). "If a defendant could immediately appeal the denial of his motion to dismiss, the court of appeals would be reviewing the report's sufficiency while its deficiencies were presumably being cured in the trial court." *Badiga v. Lopez,* 274 S.W.3d 681, 684 (Tex.2009).

### B. Analysis

Potts did file timely reports that she asserts would satisfy the requirements for an expert report. Certified EMS asserts that these reports were so inadequate as to constitute as no expert reports. *See Ogletree v. Matthews,* 262 S.W.3d 316, 323 (Tex.2007) (Willett, J., concurring) (describing some reports as so deficient as to

constitute no report). Assuming that a purported report could be so deficient that it is effectively no report, we find that these reports do not meet that standard. *See id.; see also Samlowski v. Wooten,* 332 S.W.3d 404, 410 (Tex.2011) (plurality op.) (Medina, J. writing, joined by Jefferson and Hecht, JJ.) ("A deficient expert report ... is the predicate for the exercise of the trial court's discretion under section 74.351(c)" to grant extension of time.); *id.* at 417 (Wainwright, J. dissenting in part and concurring in part) ("Unless an expert report addresses all of the required elements, section 74.351(c) does not authorize a trial court to consider an extension.") (citing *Walker v. Gutierrez,* 111 S.W.3d 56, 65 (Tex.2003) (under predecessor statute, expert report that omits at least one of the statutorily-required elements of an expert report—standard of care, breach, and causation—is not eligible for a grace period)).

In examining whether an inadequate report is effectively no report, courts have considered whether the report implicates the conduct of the defendant, regardless of whether the defendant is actually identified by name. *Morris,* 312 S.W.3d at 768 (citing *Ogletree,* 262 S.W.3d at 321) ("Even though the report did not mention the healthcare defendant by name, the Supreme Court held, '[b]ecause a report that implicated [the healthcare defendant's] conduct was served and the trial court granted an extension, the court of appeals could not reach the merits of the motion to dismiss,' and 'the court of appeals correctly determined that it lacked jurisdiction over [the healthcare defendant's] appeal.' "); *McKeever v. Cerny,* 266 S.W.3d 451, 454 (Tex.App.-Corpus Christi 2008, no pet.) (report that implicates doctor but not physician assistant who assisted doctor is considered to be more than "no report" so that trial court may grant extension of

time to cure its deficiency).[1]

■ Although they do not mention the employer specifically by name, the first reports timely filed by Potts implicate the conduct of Hardin and his employer. Foster's report mentions Hardin's improper conduct and explains that at the time of the conduct he was employed by a "Temporary Nursing Agency/Service." This was sufficient to implicate Hardin's employer, Certified EMS, for the purpose of the trial court granting an extension of time to Potts to cure the deficiencies in her reports. *Id.; Morris,* 312 S.W.3d at 768; *see also Gardner v. U.S. Imaging, Inc.,* 274 S.W.3d 669, 671–72 (Tex.2008) ("When a party's alleged health care liability is purely vicarious, a report that adequately implicates the actions of that party's agents or employees is sufficient."); *Univ. of Tex. Sw. Med. Ctr. v. Dale,* 188 S.W.3d 877, 879 (Tex.App.-Dallas 2006, no pet.) (expert report not required to mention UT Southwestern by name for vicarious liability).

The original reports were sufficient to implicate the conduct of Certified EMS. Because the trial court granted an extension of time to cure deficiencies in the reports originally filed by Potts, we lack jurisdiction over Certified EMS's appeal of the denial of its first motion to dismiss and dismiss its first four issues. *See Ogletree,* 262 S.W.3d at 321 ("[I]f a deficient report is served and the trial court grants a thirty day extension, that decision—even if coupled with a denial of a motion to dismiss— is not subject to appellate review.").

### Second Motion to Dismiss

In its fifth issue, Certified EMS contends that the trial court erred by denying its second motion to dismiss. Specifically, Certified EMS asserts that Nurse Foster is not qualified to render the expert opinion and that her supplemental report is deficient because it does not identify the standard of care applicable to Certified EMS or the alleged breaches of the standard of care. Certified EMS also challenges the report of Dr. Altschuler by contending it does not implicate the conduct of Certified EMS.

### A. Qualifications of Nurse Foster

Section 74.402, in pertinent part, provides,

[A] person may qualify as an expert witness on the issue of whether the health care provider departed from accepted standards of care only if the person: (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose. . . .

TEX. CIV. PRAC. & REM.CODE ANN. § 74.402(b) (West 2005). "Practicing health care" includes "serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defen-

---

1. We distinguish this situation from *Rivenes v. Holden,* 257 S.W.3d 332, 340–41 (Tex.App.-Houston [14th Dist.] 2008, pet. denied) (holding appellate court had jurisdiction over appeal despite motion for extension of time that was granted by trial court because no expert report was filed as report tendered by claimant did not "implicate appellant's conduct" or "refer to appellant by name or position").

We also distinguish *Garcia v. Marichalar,* 185 S.W.3d 70, 73 (Tex.App.-San Antonio 2005, no pet.) (holding appellate court had jurisdiction over appeal because defendant was not mentioned at all or focus of expert reports that were filed). Unlike these cases, Certified EMS was implicated by the report and described as a temporary nursing agency.

dant health care provider." *Id.* § 74.401(a).

■ Certified EMS objected to Nurse Foster's qualifications because she "does not state that she actively practices in a field requiring her to provide nursing care to a patient in a hospital setting." Certified EMS's objection ignores the plain language of section 74.402(a) that provides a consulting health care provider is "practicing health care." *Id.* Nurse Foster's curriculum vitae states that she is a "Nurse Consultant/Expert Witness" and a "Quality Review Nurse" for the Texas Department of Aging and Disability Services. Her curriculum vitae and report also show that she is licensed as a nurse and holds a number of nursing certifications. Thus, the record contains evidence that Nurse Foster "serv[es] as a consulting health care provider and [is] licensed, certified, or registered in the same field as the defendant health care provider." *See id.* Accordingly, the trial court did not abuse its discretion in determining Nurse Foster is qualified to offer an expert report in this case.

**B. Sufficiency of Reports to Implicate Certified EMS's Conduct**

Certified EMS contends that the reports by Nurse Foster and Dr. Altschuler are deficient because the reports do not implicate Certified EMS's conduct. Potts responds that she asserts in her petition both direct liability and vicarious liability theories against Certified EMS. Potts explains that the trial court properly denied the motion to dismiss because Certified EMS only challenged the direct liability theories and left the vicarious liability theory unchallenged by accepting the adequacy of the report's treatment of Hardin's conduct. In addressing whether the trial court erred in denying the second motion to dismiss, we resolve the parties' dispute as to whether the expert report must address both vicarious and direct liability theories for both theories to move past the expert report stage or whether a report adequate as to one of those theories is sufficient for the entire cause of action to move to the next stage. We address (1) the law concerning construction of a statute, (2) the plain language of the statute, (3) the objectives of the legislation and consequences of the construction of the statute, and (4) the conflict in the existing case law.

**1. Law Concerning Construction of Statute**

■ In construing a statute, we must "ascertain and give effect to the Legislature's intent." *HCBeck, Ltd.,* 284 S.W.3d at 352. We begin with the "plain and common meaning of the statute's words" to ascertain the Legislature's intent. *Id.* (citing *Tex. Dep't of Transp. v. City of Sunset Valley,* 146 S.W.3d 637, 642 (Tex.2004)). "If the Legislature provides definitions for words it uses in statutes, then we use those definitions in our task." *Hernandez v. Ebrom,* 289 S.W.3d 316, 318 (Tex.2009) (citing TEX. GOV'T CODE ANN. § 311.011(b) (West 2005)). We rely on the plain meaning of the text unless such a construction leads to absurd results. *City of Rockwall v. Hughes,* 246 S.W.3d 621, 625–26 (Tex.2008). We consider the statute as a whole and not its provisions in isolation. *Cont'l Cas. Co. v. Downs,* 81 S.W.3d 803, 805 (Tex.2002). "We also consider the objective the Legislature sought to achieve through the statute, as well as the consequences of a particular construction." *HCBeck, Ltd.,* 284 S.W.3d at 352 (citing TEX. GOV'T CODE ANN. § 311.023(1), (5) (West 2005)).

**2. Analysis of Plain Language of Statute**

We begin by examining the plain language of the statute. *Id.* In pertinent

part, Chapter 74 of the Civil Practice and Remedies Code states,

(a) *In a health care liability claim,* a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider *against whom a liability claim is asserted* .... Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived.

(b) If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall ... enter an order that ... *dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.*

TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (emphasis added).

Chapter 74 defines "claim" as "a health care liability claim." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(2). In turn, a "health care liability claim" is defined as: *a cause of action* against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(13) (West Supp.2010) (emphasis added). Although not defined by Chapter 74, a cause of action has been described by the Texas Supreme Court as "a fact or facts entitling one to institute and maintain an action, which must be proved in order to obtain relief" and as a "group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person." *In re Jorden,* 249 S.W.3d 416, 421 (Tex.2008) (orig. proceeding) (quoting *A.H. Belo Corp. v. Blanton,* 133 Tex. 391, 129 S.W.2d 619, 621 (1939); BLACK'S LAW DICTIONARY 235 (8th ed. 2004)).

■ Replacing the word "claim" with the term "cause of action" and its definition, the plain language in section 74.351(a) requires the claimant to file an expert report for each physician or health care provider against whom a cause of action—i.e., group of operative facts giving rise to one or more bases for suing—is asserted. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a); *In re Jorden,* 249 S.W.3d at 421 (defining "cause of action"). By focusing on a cause of action rather than particular liability theories that may be contained within a cause of action, the plain language does not require an expert report to set out each and every liability theory that might be pursued by the claimant as long as at least one liability theory within a cause of action is shown by the expert report. *See* TEX. CIV. PRAC. & REM.CODE § 74.351(a); *In re Jorden,* 249 S.W.3d at 421.

■ Similarly, by replacing the word "claim" with the term "cause of action" and its definition, the plain language in section 74.351(b) requires dismissal of the cause of action, or group of operative facts giving rise to one or more bases for suing, with respect to the physician or health care provider. *See* TEX. CIV. PRAC. &

REM.CODE ANN. § 74.351(b); *In re Jorden*, 249 S.W.3d at 421. By focusing on a cause of action rather than particular liability theories that may be contained within a cause of action, the plain language establishes that the entire cause of action is dismissed with respect to the defendant when the claimant has failed to file an expert report that sets out at least one liability theory within a cause of action. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b); *Yamada v. Friend,* 335 S.W.3d 192 196 (Tex.2010) ("The TMLA requires the trial court to dismiss a suit asserting health care liability claims against a physician or health care provider if the plaintiff does not timely file an expert report as to that defendant."); *In re Jorden,* 249 S.W.3d at 421. But if at least one liability theory within a cause of action is shown by the expert report, then the claimant may proceed with the entire cause of action against the defendant, including particular liability theories that were not originally part of the expert report, as long as those liability theories are contained within the same cause of action. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b); *Yamada,* 335 S.W.3d at 195–196; *In re Jorden,* 249 S.W.3d at 421. We conclude the plain language of the statute focuses on each defendant and the cause of action against that defendant, not each basis for suing or theory of liability. *See Hughes,* 246 S.W.3d at 625–26 (stating courts must rely on plain language of statute).

### 3. Objectives of Legislation and Consequences of Construction

An examination of other sections in Chapter 74 suggests that the focus is on causes of action rather than particular individual liability theories contained within a cause of action. The expert report is due within 120 days of the filing of the original petition. *See* TEX. CIV. PRAC. & REM.

CODE ANN. § 74.351(a) (West Supp.2010). Additionally, prior to the service of the expert report, discovery is limited to written discovery with no more than two depositions on written questions and no discovery from nonparties. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(s), (u). The short deadline for filing an expert report and the limited discovery make it impractical to expect a claimant to know all possible liability theories within a cause of action when he files his expert report.

An expert report required by section 74.351(a) is meant to serve two purposes: (1) "to inform the defendant of the specific conduct the claimant is questioning" and (2) "to 'provide a basis for the trial court to conclude that the claim has merit.'" *Leland v. Brandal,* 257 S.W.3d 204, 206–07 (Tex.2008) (quoting *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 879 (Tex.2001)). In this way, section 74.351 serves as a "gatekeeper." *TTHR, L.P. v. Guyden,* 326 S.W.3d 316, 319 (Tex.App.-Houston [1st Dist.] 2010, no pet.) (citing TEX. CIV. PRAC. & REM.CODE ANN. § 74.351; *Murphy v. Russell,* 167 S.W.3d 835, 838 (Tex.2005)). The expert report requirement "establishes a threshold over which a claimant must proceed to continue a lawsuit." *Murphy,* 167 S.W.3d at 838. Because it is a preliminary threshold, the expert report may not be admitted as evidence, used in a deposition, trial or other proceeding, or even referred to for any purpose during the suit. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(k); *see also id.* § 74.351(t) (providing if claimant uses expert report then prohibition in subsection (k) is waived). Once the expert report requirement is met, the gate-keeping purpose has been achieved, and the claimant's case may proceed, including full discovery. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(s) (providing all but limited discovery is

stayed until expert report required by § 74.351(a) is served). Therefore, if the claimant timely serves an expert report that adequately addresses at least one liability theory against a defendant health care provider, the suit can proceed, including discovery, without the need for every liability theory to be addressed in the report. *See Baylor Coll. of Med. v. Pokluda,* 283 S.W.3d 110, 123 n. 3 (Tex.App.-Houston [14th Dist.] 2009, no pet.) (explaining that dismissal of health care liability claim was not warranted because expert report satisfied section 74.351(r)(6)'s requirement with respect to alleged deviation from standard of care during surgery "regardless of whether [the] report also satisfies section 74.351(r)(6)'s requirements with respect to [doctor's] alleged deviations from standard of care before surgery.").

In its motion for en banc reconsideration, Certified EMS argues that our holding contravenes the public policy behind Chapter 74, namely, "to inform the defendant of the specific conduct the claimant is questioning" in the health care liability claim. *Leland,* 257 S.W.3d at 206–07. Certified EMS interprets this purpose to mean that an expert report is intended to put the defendant on notice as to the "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). Certified EMS notes that our holding permits a plaintiff in a health care liability claim to plead a vicarious liability theory against a defendant, serve an expert report adequate as to that theory, but then later plead a direct liability theory against the same defendant without ever having to submit an expert report specifically addressing the standard of care, the failure to meet that standard, and causation as to the direct liability the-

ory. Observing that an expert report can be adequate as to a vicarious liability theory without mention of any specific conduct of the defendant, *Gardner v. U.S. Imaging, Inc.,* 274 S.W.3d 669, 671–72 (Tex. 2008), Certified EMS contends that our holding contradicts Chapter 74's notification policy by allowing a plaintiff to assert a direct liability claim without ever informing the defendant of any of its specific conduct.

We disagree that our holding permits a plaintiff to proceed without giving a defendant notice of the cause of action. A plaintiff receives notice of a cause of action through the requirement that at least one liability theory must be adequate. Although our holding allows a plaintiff to pursue a liability theory not found in the expert report, he may do so only if the additional theory arises out of the same group of operative facts set forth in the expert report and is asserted against the same defendant. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a); *In re Jorden,* 249 S.W.3d at 421 (defining "cause of action" as "group of operative facts giving rise to one or more bases for suing"). The defendant, therefore, is on notice concerning the conduct that forms the basis of the cause of action.

Our holding not only places the defendant on notice concerning the cause of action, but it also satisfies the other purpose of the expert report by functioning as a gatekeeper. We require early dismissal of a particular defendant if the expert reports fail to show that there is a cause of action against a defendant. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b), (s), (u); *TTHR,* 326 S.W.3d at 319–320; *Leland,* 257 S.W.3d at 207.

If we were to narrowly construe the word "claim" to mean a particular liability theory—rather than the group of operative

facts giving rise to one or more basis for suing—the dismissal contemplated by section 74.351(b) would require dismissal with prejudice only as to that particular theory. This is contrary to the intent of the statute to dismiss early a defendant from a lawsuit. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b). The interpretation suggested by Certified EMS would require the dismissal of only the particular liability theory not shown by the expert report rather than the dismissal of the entire cause of action. Section 74.351(b) states that the trial court shall enter an order that "dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim." *Id.* By applying the statutory definition for claim, which is "cause of action," the section requires that the trial court enter an order that dismisses the cause of action with respect to the physician or health care provider with prejudice to the refiling of the cause of action. Therefore, under this interpretation, a plaintiff could not continually splice a cause of action into multiple liability theories and continue to file these alternate theories without prejudice if the particular liability theory had not been presented before in a pleading.

Chapter 74's focus on cause of action—"group of operative facts giving rise to one or more basis for suing"—means that the failure to provide an expert report adequate as to at least one liability theory arising from the "group of operative facts" requires the dismissal with prejudice of all liability theories within that cause of action. Although it is correct to observe that a plaintiff may proceed against a defendant if he asserts at least one liability theory within a cause of action, it must also be noted that a defendant is entitled to dismissal with prejudice of all liability theories within a cause of action if no liability theory is timely shown by an expert report. *See* TEX. CIV. PRAC. & REM.

CODE ANN. § 74.351(a), (b). The dismissal of an entire cause of action satisfies the intent of the Legislature to require the early dismissal of defendants from frivolous lawsuits. *See Leland,* 257 S.W.3d at 208 (noting purpose of section 74.351 is to "reduce excessive frequency and severity of health care liability claims" while striking balance between "eradicating frivolous claims and preserving meritorious ones"). Because the intent of the Legislature is to require the early dismissal of the entire cause of action from frivolous lawsuits filed against defendants, we are unpersuaded by Certified EMS's argument that our decision would allow a plaintiff, after the expert report filing stage, to later dismiss vicarious liability theories and pursue direct liability theories never presented in an expert report. As we have noted above, the purpose of the expert report is to serve as a gatekeeper that allows nonfrivolous causes of action against a defendant to move forward past an initial stage so that full discovery concerning the lawsuit may take place. After full discovery has taken place, a plaintiff's approach to a lawsuit might vary from its initial approach, which is permitted under the expert report statute, as long as the liability theories underlie the same cause of action. *See In re Jorden,* 249 S.W.3d at 421 (explaining that "health care liability claim" includes potential claims not yet filed).

### 4. Conflict in the Case Law

The Supreme Court of Texas has not directly decided whether an expert report must set out each and every liability theory within a cause of action. The court has discussed the meaning of "cause of action" as used by Chapter 74 by stating, "The statute here confirms in several places that the term 'cause of action' was used in the general sense relating to underlying facts rather than a more limited sense applica-

ble only to filed suits." *Id.* (determining rule 202 depositions disallowed by statutory language in chapter 74). Though indirect, the court has expressed approval of an examination of the general, underlying facts to determine what constitutes a cause of action under Chapter 74. *See Yamada,* 335 S.W.3d at 197 ("Our prior decisions are to the effect that if the gravamen or essence of a cause of action is a health care liability claim, then allowing the claim to be split or spliced into a multitude of other causes of action with differing standards of care, damages, and procedures would contravene the Legislature's explicit requirements."); *In re Jorden,* 249 S.W.3d at 421.[2]

Intermediate courts of appeals are split concerning whether an expert report adequate as to at least one liability theory within a cause of action is sufficient to permit other liability theories within the same cause of action to proceed although the expert report is deficient with respect to the other theories.[3] *Compare Pokluda,* 283 S.W.3d at 123 n. 3 (declining to address adequacy of report concerning pre-surgery breaches of standard of care when expert report adequately addressed breaches occurring during surgery),[4] *Pedroza v. Toscano,* 293 S.W.3d 665, 668 (Tex.App.-San Antonio 2009, no pet.) (concluding that when testifying expert relied on different acts than those disclosed by the Chapter 74 expert report, testifying expert was not precluded from testifying because he was "not asserting a different cause of action, only a different negligence theory"), *and Schmidt v. Dubose,* 259 S.W.3d 213, 218 (Tex.App.-Beaumont 2008, no pet.) ("Multiple causes of action do not arise dependent on whether the physician was negligent before, during, or after the

**2.** This Court is aware that the Texas Supreme Court has analyzed the adequacy of a report with respect to a health liability claims by detailing the various liability theories within it. *In re McAllen Medical Center,* 275 S.W.3d 458, 464–65 (Tex.2008). In *McAllen,* the court, first, said that the expert report was inadequate to show that the hospital was negligent in hiring, retaining, and supervising the doctor because the purported expert was not qualified to make the report. *Id.* at 463. Second, the court stated that the expert report was inadequate to show vicarious liability because the report failed to suggest the hospital controlled the details of the doctor's medical tasks. *Id.* at 464. Third, the court explained that the fraud, fraudulent concealment, civil conspiracy, and misrepresentation claims were clandestine credentialing claims that required an expert report, which had not been provided by the claimant. *Id.* Although it examined each of the theories presented by the claimant, the court did so to explain why none of the theories presented could support the cause of action against the hospital. *Id.* The court did not express any comment concerning whether the expert report would have been adequate as to all the theories within the cause of action if any of the theories had been found to be supported by the report. *Id.*

**3.** In its motion for en banc reconsideration, Certified EMS asserts that we "incorrectly opine[ ] that the courts of appeals are split as to whether an expert report must address both vicarious and direct liability theories." This assertion misstates our opinion. The split to which we actually refer concerns multiple liability theories in general, not vicarious versus direct liability theories in particular.

**4.** Unlike *Pokluda,* the Fourteenth court of appeals has also suggested that an expert report is required to separately address direct and vicarious liability theories against a single defendant for the report to be adequate as to those theories. *See Obstetrical & Gynecological Assocs. v. McCoy,* 283 S.W.3d 96, 103 (Tex.App.-Houston [14th Dist.] 2009, pet. denied) ("If OGA is correct that McCoy has asserted claims of direct negligence against it, then McCoy was required to serve OGA with an expert report specifically addressing its conduct rather than just the conduct of Drs. Jacobs and Gunn for which OGA is vicariously liable."). The court, however, ultimately held that no expert report was required in that case.

wrong cut."), *with Farishta v. Tenet Healthsystem Hosps. Dallas, Inc.*, 224 S.W.3d 448, 455 (Tex.App.-Fort Worth 2007, no pet.) (affirming denial of dismissal as to some injuries but ordering dismissal as other injuries where appellant's petition alleged multiple injuries resulting from doctor's failure to meet same standard of care yet expert report addressed only some injuries).

In its motion for en banc reconsideration, Certified EMS contends that our holding is contrary to the decisions of other courts of appeals. *See River Oaks Endoscopy Ctrs., L.L.P. v. Serrano*, No. 09–10–00201–CV, 2011 WL 303795, at *2 (Tex. App.-Beaumont Jan. 27, 2011, no pet.) (mem. op.); *Petty v. Churner*, 310 S.W.3d 131, 138 (Tex.App.-Dallas 2010, no pet.); *Beaumont Bone & Joint Inst., P.A. v. Slaughter*, No. 09–09–00316–CV, 2010 WL 730152, at *4–5 (Tex.App.-Beaumont Mar. 4, 2010, pet. denied) (mem. op.); *Obstetrical & Gynecological Assocs., P.A. v. McCoy*, 283 S.W.3d 96, 104 (Tex. App.-Houston [14th Dist.] 2009, pet. denied); *Knapp Med. Ctr. v. Molina*, No. 13–09–00372–CV, 2009 WL 3861124, at *5 (Tex. App.-Corpus Christi Nov. 19, 2009, no pet.) (mem. op.). We agree with Certified EMS that our decision is inconsistent with the decisions from the Beaumont court of appeals in *Serrano*[5] and *Slaughter*,[6] but we disagree with its characterization of any conflict in the holdings of the other courts of appeals. For example, in *Petty*, the

5. In *Serrano*, the plaintiff pleaded health care liability claims against a doctor and a health care provider that employed the doctor. *River Oaks Endoscopy Centers, L.L.P. v. Serrano*, No. 09–10–00201–CV, 2011 WL 303795, at *1 (Tex.App.-Beaumont Jan. 27, 2011, no pet.) (mem. op.). The plaintiff alleged the doctor was directly liable for negligence. *Id.* at *3. The plaintiff alleged the provider was directly liable for negligence and vicariously liable for the doctor's negligence. *Id.* at *3. The provider filed a motion to dismiss "contend[ing] that [the plaintiff] did not submit an expert report on her direct liability theories of recovery against" it. *Id.* at *1. After the trial court denied the provider's motion to dismiss, the provider filed an interlocutory appeal. *Id.* The Beaumont court of appeals held that the plaintiff was required to submit expert reports on both the direct and vicarious liability theories, which it described as separate health care liability claims. *Id.* at *2. The court then determined that the expert report was inadequate as to the direct liability theories asserted against the provider. *Id.* at *2. Noting that the provider had not challenged the adequacy of the report as to the vicarious liability theories, the appellate court reversed the trial court's order only to the extent that it denied dismissal of the direct liability theories. *Id.* at *3.

6. In *Slaughter*—another case out of the Beaumont court of appeals—the plaintiff pleaded health care liability claims against a doctor and a health care provider. *Beaumont Bone & Joint Inst., P.A. v. Slaughter*, No. 09–09–00316–CV, 2010 WL 730152, at *1 (Tex.App.-Beaumont Mar. 4, 2010, pet. denied) (mem. op.). The plaintiff alleged the doctor was directly liable for negligence. *Id.* The plaintiff alleged the provider was directly liable for negligence and vicariously liable for the negligence of the doctor, another physician, the appointment schedulers, and the medical assistant. *Id.* After the trial court denied the provider's motion to dismiss, the provider filed an interlocutory appeal. *Id.* The Beaumont court of appeals determined that the expert report was adequate as to the vicarious liability theories based on the negligence of the doctor, the appointment schedulers, and the medical assistant. *Id.* at *4. However, it determined that the report was inadequate as to the vicarious liability theory based on the other physician's negligence. *Id.* at *3. Finally, it determined that the report was inadequate as to the direct liability theories asserted against the provider. *Id.* at *4. Accordingly, the appellate court reversed the trial court's order denying the provider's motion to dismiss as to the vicarious liability theory based on the other physician's negligence and the direct liability theories. *Id.* at *5. We agree with Certified EMS that the Beaumont court of appeals' holdings in *Serrano* and *Slaughter* conflict with our present holding.

Dallas court of appeals determined the report was inadequate to any liability theory and required the dismissal of the entire case, which is consistent with our present holding.[7] Similarly, in *McCoy*, the Fourteenth court of appeals determined the report was adequate as to at least one liability theory within a cause of action and affirmed the denial of the motion to dismiss, which is also consistent with our present holding, although the basis for allowing certain liability theories to move forward was a party's failure to timely object to the adequacy of the report.[8] Furthermore, the Corpus Christi court of appeals in *Knapp* did not reach the question whether the direct liability theory could move forward if the report was ade-

7. In *Petty*, the plaintiffs pleaded health care liability claims against a doctor and a health care provider. *Petty v. Churner*, 310 S.W.3d 131, 133 (Tex.App.-Dallas 2010, no pet.). The plaintiffs alleged the doctor was directly liable for negligence. *Id.* The plaintiffs also alleged the doctor and the provider were vicariously liable for a technician's negligence. *Id.* at 133–34. Both the doctor and the provider filed motions to dismiss. *Id.* at 134. The trial court granted the doctor's motion but denied the provider's motion. *Id.* Both the plaintiffs and the provider appealed. *Id.* The Dallas court of appeals determined that the expert reports were inadequate as to the vicarious liability theory asserted against the provider, and it reversed the trial court's denial of the provider's motion to dismiss. *Id.* at 136–37. For the same reasons, the appellate court found the reports inadequate as to the vicarious liability theory asserted the doctor. *Id.* at 138. Determining that the reports were also inadequate as to the direct liability theory asserted against the doctor, the appellate court affirmed the trial court's grant of the doctor's motion to dismiss. *Id.* at 138. Although the *Petty* court separately analyzed the adequacy of the expert reports as to both direct and vicarious liability theories, the court may have done so to determine if the report is adequate as to either theory. *See id.* Contrary to Certified EMS's assertion, the Dallas court of appeals' holding in *Petty* is consistent with our present holding as the expert reports were not found to be adequate as to at least one liability theory within the cause of action asserted against a single defendant.

8. In *McCoy*, the plaintiffs pleaded health care liability claims against two doctors and a health care provider, which employed the doctors. *Obstetrical & Gynecological Assocs., P.A. v. McCoy*, 283 S.W.3d 96, 99 (Tex.App.-Houston [14th Dist.] 2009, pet. denied). The plaintiffs alleged the doctors were directly liable for negligence. *Id.* The plaintiffs alleged the provider was (1) vicariously liable under the doctrine of respondeat superior for the doctors' negligence; (2) liable under the Texas Professional Association Act based on the doctors' conduct; (3) liable for the doctor's gross negligence; and (4) liable based on a vice-principal theory and an allegation that the provider authorized or ratified the doctors' conduct. *Id.* at 99, 106–08. After the trial court denied the provider's motion to dismiss, the provider filed an interlocutory appeal. *Id.* at 99. On appeal, the provider characterized allegations (2), (3), and (4) as being direct liability theories. *Id.* at 104, 106, 108. Although not disputing the provider's characterization, the Fourteenth court of appeals determined that each allegation based liability on the conduct of the provider's doctors as distinguished from the conduct of the provider as an entity. *Id.* at 110. The court explained that where a party's liability is predicated upon another's conduct, no additional expert report is required if the party's liability is based on a legal principal, rather than a medical standard of care. *Id.* at 106. Accordingly, because the provider had failed to timely object to the expert reports concerning the doctors' conduct, the court held that the trial court was within its discretion to not grant the provider's motion to dismiss. *Id.* at 103, 110. Contrary to Certified EMS's assertion, the Fourteenth court of appeals' holding in *McCoy* is consistent with our present holding: the expert reports were adequate as to at least one liability theory within the cause of action, and the appellate court affirmed the denial of the motion to dismiss. Nevertheless, we note that the *McCoy* court's reasoning is inconsistent with our present holding in that it suggests direct and vicarious liability theories asserted against the same defendant may each proceed only if the expert reports are adequate as to each theory. *See id.* at 103.

quate only as to vicarious liability theory, although both theories were allowed to move forward in that case because the defendant did challenge the direct liability theory.[9] Although other intermediate courts of appeals have addressed similar situations, we have not found any case that has performed a statutory analysis of the meaning of claims and causes of action in the context of a medical expert report, and we, therefore, are guided in this case by the plain meaning and purpose of the statute.

Our holding is also supported by our earlier suggestion that an expert report need not set forth each liability theory within a cause of action. *See Clear Lake Rehab. Hosp. L.L.C. v. Karber*, No. 01–09–00883–CV, 2010 WL 987758, at *5 n. 7 (Tex.App.-Houston [1st Dist.] 2010, no pet.). In *Karber*, this Court stated:

> We recognize that, in his report, Evans opines that Clear Lake's breach of the standard of care proximately caused not only Karber's fracture but also the subsequent infection and amputation. However, because Karber has asserted a healthcare liability claim based, at least in part, upon her fracture, and because we have concluded that Evans is qualified to opine on the causal relationship between Clear Lake's breach and Karber's injury of a fracture, we conclude

that the trial court acted within its discretion in determining that Evans was qualified to offer causation opinions in support of Karber's claim.

*Id.* This Court, therefore, found that the adequacy of the report as to the fracture was sufficient for the entire cause of action, which included liability theories based on the subsequent infection and amputation, to move forward. *Id.* However, in *Karber*, this Court did not directly discuss whether a claim should be split or under what circumstances that should occur, nor was that argument made by the parties in that appeal. *See id.*

In its motion for en banc reconsideration, Certified EMS suggests en banc reconsideration is required because our opinion conflicts with a prior decision of this Court. *See Univ. of Tex. Med. Branch v. Railsback*, 259 S.W.3d 860, 864 (Tex.App.-Houston [1st Dist.] 2008, no pet.). We disagree. *Railsback* concerned an analysis of a hospital's liability based on the conduct by three different actors: Dr. Ivey, the hospital nursing staff, and Dr. Maxwell. *Id.* at 862, 685. Railsback sued the hospital on (1) a direct liability theory of negligence for (a) failing to monitor its physicians and employees and (b) negligent supervision and failure to train its physicians and employees in the proper

---

9. In *Knapp*, the plaintiff pleaded health care liability claims against a nurse and a health care provider that employed the nurse. *Knapp Med. Ctr. v. Molina*, No. 13–09–00372–CV, 2009 WL 3861124, at *1 (Tex.App.-Corpus Christi Nov. 19, 2009, no pet.) (mem. op.). The plaintiff alleged the nurse was directly liable for negligence. *Id.* The plaintiff alleged the provider was directly liable for negligence and vicariously liable for the nurse's negligence. *Id.* The plaintiff's expert report was adequate only as to the claim against the nurse. *Id.* at *5. The provider filed a motion to dismiss the claim against it, including both the direct and vicarious liability theories. *Id.* at *1, *5 n. 4. After the trial

court denied the provider's motion to dismiss, the provider filed an interlocutory appeal. *Id.* at *1. The Corpus Christi court of appeals determined that the expert report was adequate as to the claim asserted against the nurse. *Id.* at *5. Accordingly, it found the report adequate as to the vicarious liability theory asserted against the health care provider. *Id.* Noting that the provider had not challenged the adequacy of the report specifically as to the direct liability theory, the court overruled the provider's challenge to the denial of the dismissal. *Id.* Because the provider had not challenged the adequacy of the report as to the direct liability theory, the *Kaupp* court did not reach the question at issue here.

technique and positioning of a tourniquet and (2) a vicarious liability theory for the acts and omissions of its employees and agents. *Id.* at 862. By focusing on the report's discussion of the particular conduct by the three different actors, *Railsback*'s analysis notes that the report mentions Dr. Maxwell only once, finds the expert report inadequate concerning his conduct, and orders the dismissal of the direct and vicarious liability theories premised on his conduct. *Id.* at 865–66. In *Railsback*, this Court determined that the expert report was:

- adequate against the hospital for vicarious liability for acts and omissions premised on the conduct by Dr. Ivey and the hospital's nursing staff; and
- inadequate against the hospital for direct liability and vicarious liability for acts and omissions premised on the conduct by Dr. Maxwell.

*Id.* at 866, 870. *Railsback*, therefore, split the health care liability claim by allowing the vicarious liability theories premised on the conduct by Dr. Ivey and the hospital's nursing staff to move forward but dismissing the vicarious and direct liability theories premised on the conduct of Dr. Maxwell. *Id.* If we applied our present holding to the facts in *Railsback*, we would determine that, despite the expert report's failures concerning some of the liability theories, the entire cause of action concerning the placement of the tourniquet could move forward against the hospital because at least one liability theory within the cause of action was shown by the expert report. *See id.* However, we note that the argument presently before us does not appear to have been made by the parties in *Railsback* and the opinion does not directly discuss the propriety of allowing a cause of action to proceed against a defendant when not all liability theories are shown by the expert report. *See id.*

Therefore, the implicit holding of *Railsback* relied on by Certified EMS in its motion for en banc reconsideration does not constitute binding precedent. *See Cooper Indus., Inc. v. Aviall Servs., Inc.,* 543 U.S. 157, 170, 125 S.Ct. 577, 586, 160 L.Ed.2d 548 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (quoting *Webster v. Fall,* 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925)); *Hatcher v. Range,* 98 Tex. 85, 89, 81 S.W. 289, 291 (1904) ("We are equally bound by those precedents, unless there be present in this [case] a sound reason why they should be disregarded which was not considered in those cases."); *Herring–Hall–Marvin Co. v. Kroeger,* 23 Tex.Civ. App. 672, 674, 57 S.W. 980, 981 (Tex.Civ. App.1900, writ ref'd) (distinguishing conflicting holdings where question under present consideration had not been raised or discussed). En banc reconsideration is, therefore, not required.

### 5. Analysis of Report Filed by Potts

■ Here, the facts giving rise to Potts's right to institute and maintain an action include Hardin's actions and the actions of Certified EMS in employing, hiring, training, and supervising Hardin. This group of operative facts give rise to at least two bases for suing Certified EMS— direct liability and vicarious liability. In other words, although Potts has asserted two bases for a potential recovery from Certified EMS, it is one "cause of action" and thus one "claim" under chapter 74. *Compare* TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13) (defining "health care liability claim") *with In re Jorden,* 249 S.W.3d at 421 (defining "cause of action"). Focusing on Certified EMS and not on each theory of liability asserted by Potts, an expert report implicating Hardin's con-

duct and Certified EMS status as Hardin's employer—for the underlying cause of action concerning Hardin's improper touching of Potts—was served on Certified EMS. Thus, the requirements of the statute were met.

We conclude that Potts's expert report adequately addresses facts describing the improper sexual conduct by the nurse, and the report, therefore, is adequate as to his employer, Certified EMS, under the vicarious-liability legal theory of respondeat superior. Because the lawsuit by Potts may proceed against Certified EMS under at least one liability theory for the cause of action concerning the nurse's improper sexual contact with Potts, Potts may proceed with any and all liability theories for this cause of action, regardless whether those other liability theories were shown in an adequate expert report. In contrast, if Potts had not provided an adequate expert for any liability theory for this cause of action, the entire cause of action would have been dismissed with prejudice, regardless whether those theories had been pleaded. We hold the trial court properly denied the motion to dismiss.

We overrule Certified EMS's fifth issue.

### Conclusion

Because we lack jurisdiction, we do not address Certified EMS's appeal concerning its first motion to dismiss. We affirm the trial court's order denying Certified EMS's second motion to dismiss.

TERRY JENNINGS, Justice, concurring.

I join the majority opinion. I write separately to respond to Certified EMS's arguments on rehearing that this Court's opinion in the instant case conflicts with our opinion in *University of Texas Medical Branch v. Railsback*, 259 S.W.3d 860, 864 (Tex.App.-Houston [1st Dist.] 2008, no

pet.). As the majority notes, the arguments presented in this case were not presented in *Railsback*. However, to the extent *Railsback* contains language conflicting with today's holding, I would disavow such language.

Justice JENNINGS, concurring.