Opinion issued
June 14, 2012.



In
The

Court of
Appeals

For
The

First District
of Texas

————————————

NO. 01-11-01100-CV

———————————

Nexion Health at Beechnut, Inc. d/b/a Beechnut Manor, Appellant

V.

Estate of Shauna
Thompson Kent, deceased, and Matthew Gerald Bray, as temporary administrator of
the Estate of ShaunA Thompson Kent, Deceased, Appellees



 



 

On Appeal from the Probate
Court Number 1

Harris County, Texas



Trial
Court Case No. 404,607-401

 



 

 

MEMORANDUM
OPINION

 

          Nexion
Health at Beechnut, Inc. brings this interlocutory appeal challenging the trial
court’s denial of its motion to dismiss a health care liability claim.  See
Tex. Civ. Prac. & Rem. Code Ann.
§ 51.014(a)(9) (West Supp. 2011).   Matthew Bray, as temporary administrator of
the estate of Shauna Thompson Kent, deceased, brought a health care liability
claim against Beechnut, a long-term care facility, for injuries Kent suffered
while a patient there.  Bray alleged
multiple acts of negligence and gross negligence in his petition and, as
required by statute, served expert reports. 
See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(a) (West 2011). 
Asserting the reports were
deficient for failing to address each specific act of alleged negligence,
Beechnut sought dismissal of the alleged acts of negligence that were not
addressed in the expert reports.  The
trial court denied the motion to dismiss and Beechnut appealed.  Because a prior opinion from this court
rejected the argument Beechnut makes in this appeal, we affirm.

Background

          On
April 29, 2009, Kent was admitted to Beechnut for long-term care relating to
her deteriorating health, which included diagnoses of progressive dementia,
diabetes, coronary artery disease, cerebral vascular disease, and altered mental
status.  She also suffered from chronic
depression, anxiety, paranoia, and agitation.  Because of her dementia, Kent was unable to
follow or understand instructions or commands or to recall or relate recent
events.  In addition, Kent had a gait/balance
disorder, muscle weakness, neuropathy, and poor vision.  Because of her conditions, Kent was on
multiple medications, including psychotropic medications, blood thinners,
insulin, pain medication, and antihypertensives.  As a result of her medical conditions and
medications, Kent was unable to safely move or walk on her own: she required a
wheelchair or a walker and assistance in transferring to or from the
wheelchair, bed, and the toilet.  She
presented a very high risk for falling on a “fall risk assessment.”  

          On
May 26, Kent fell in her room.  She broke
her hip and required surgery as well as a lengthy hospitalization.  After Kent’s death, Bray, as the
administrator of her estate, sued Beechnut for negligence and gross
negligence.  As required by statute, Bray
filed an expert
report by Dr. Eric Orzeck, M.D., and a report by Ruthanne Parton, R.N.  Beechnut moved to dismiss the suit, in
part.  The trial court denied the motion
to dismiss and Beechnut appealed.  

Analysis

A.      Standard of Review

          We review a trial court’s ruling on a
motion to dismiss a health care liability lawsuit pursuant to Chapter 74 of the
Texas Civil Practice and Remedies Code under an abuse of discretion standard.  See Am. Transitional Care Ctrs. of Tex., Inc. v.
Palacios, 46 S.W.3d 873, 875 (Tex. 2001) (reviewing dismissal under
predecessor statute, section 13(e) of article 4590i); Runcie v. Foley, 274 S.W.3d 232, 233 (Tex. App.—Houston [1st Dist.]
2008, no pet.).  A trial court abuses its
discretion if it acts in an arbitrary or unreasonable manner without reference
to guiding rules or principles, or if it clearly fails to analyze or apply the
law correctly.  Runcie, 274 S.W.3d at 233. 
In reviewing whether an expert report complies with Chapter 74, we
evaluate whether the report “represents a good-faith effort” to comply with the
statute.  Strom v. Mem’l Hermann Hosp.
Sys., 110 S.W.3d 216, 221 (Tex. App.—Houston [1st Dist.] 2003, pet.
denied).  In making this evaluation, we
must look only at the information contained within the four corners of the
report.  Bowie Mem’l Hosp. v. Wright,
79 S.W.3d 48, 53 (Tex. 2002).

B.
     Chapter 74 Expert Report Requirements

          Pursuant
to section 74.351, medical-malpractice plaintiffs must provide each defendant
physician and health care provider with an expert report.  Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(a).  If a claimant timely furnishes an expert
report, a defendant may file a motion challenging the report’s adequacy.  Id.  The trial court shall grant the motion only if
it appears, after hearing, that the report does not represent an objective good
faith effort to comply with the statutory definition of an expert report.  Id. § 74.351(l).  The statute defines an
expert report as a written report by an expert that provides, as to each
defendant, a fair summary of the expert’s opinions, as of the date of the
report, regarding: (1) the applicable standards of care; (2) the manner in
which the care rendered failed to meet the standards; and (3) the causal
relationship between that failure and the injury, harm, or damages
claimed.  Id. § 74.351(r)(6);
Gray v. CHCA Bayshore, L.P., 189
S.W.3d 855, 858-59 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

          Although
the report need not marshal all the plaintiff’s proof, it must include the
expert’s opinions on the three statutory elements—standard of care, breach, and
causation.  Palacios, 46 S.W.3d at
878; Gray, 189 S.W.3d at 859.  In
detailing these elements, the report must provide enough information to fulfill
two purposes: first, it must inform the defendant of the specific conduct the
plaintiff has called into question, and, second, it must provide a basis for
the trial court to conclude that the claims have merit.  Scoresby
v. Santillan, 346 S.W.3d 546, 556 (Tex. 2011) (citing Palacios, 46
S.W.3d at 879).  A report that merely
states the expert’s conclusions as to the standard of care, breach, and
causation does not fulfill these two purposes. 
Id.  “‘[T]he expert must explain the basis of his
statements to link his conclusions to the facts.’”  Wright, 79 S.W.3d at 52 (quoting Earle
v. Ratliff, 998 S.W.2d 882, 890 (Tex. 1999)).  Furthermore, in assessing the report’s
sufficiency, the trial court may not draw any inferences, and instead must rely
exclusively on the information contained within the report’s four corners.  See Scoresby, 346 S.W.3d at 556 (citing Wright, 79 S.W.3d
at 53).

C.      Beechnut’s Objection

          Beechnut’s
sole objection to the reports is that Dr. Orzeck and Ms. Parton did not address
each of the thirty-eight specific acts of negligence or gross negligence
alleged in Bray’s petition.  According to
Beechnut, the trial court abused its discretion when it failed to dismiss Bray’s
negligence claims with respect to the acts of negligence or gross negligence
that were not addressed in the expert reports. 


          Chapter 74
defines a “claim” as “a health care liability claim.”  Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(r)(2).  A “health care liability claim” is defined as:

a cause of action against a health care provider
or physician for treatment, lack of treatment, or other claimed departure from
accepted standards of medical care, or health care, or safety or professional
or administrative services directly related to health care, which proximately
results in injury to or death of a claimant, whether the claimant's claim or
cause of action sounds in tort or contract.

 

Id. § 74.001(13) (West Supp. 2010)
(emphasis added).  Chapter 74 does not
define a “cause of action” but the Texas Supreme Court describes a cause of
action as:

“a fact or facts entitling one to institute and maintain
an action, which must be proved in order to obtain relief” and as a “group of
operative facts giving rise to one or more bases for suing; a factual situation
that entitles one person to obtain a remedy in court from another person.”

 

Certified EMS, Inc. v. Potts, 355 S.W.3d 683, 691 (Tex. App.—Houston
[1st Dist.] 2011, pet. granted) (quoting In re Jorden, 249 S.W.3d 416, 421 (Tex. 2008)
(orig. proceeding)).

          In
Certified EMS, this court concluded that under the plain language of Chapter
74, a “claim” or “health care liability claim” was a “cause of action,” and not
each particular liability theory that had been alleged in support of a cause of
action.  Id.  This court stated, 

By focusing on a cause of action rather than particular
liability theories that may be contained within a cause of action, the plain
language does not require an expert report to set out each and every liability
theory that might be pursued by the claimant as long as at least one liability
theory within a cause of action is shown by the expert report.

 

           . . . . 
[I]f at least one liability theory within a cause of action is shown by
the expert report, then the claimant may proceed with the entire cause of
action against the defendant, including particular liability theories that were
not originally part of the expert report, as long as those liability theories
are contained within the same cause of action. 

 

Id.
at 691­–92.  Thus, in Certified EMS, this court held that an
expert report that addressed only a vicarious liability theory did not require
the dismissal of the direct liability theory against the health care
provider.  Id. at 700.  In other words, although
there were two theories of liability—direct and vicarious—there were not two
“claims” or “causes of action.”  Rather,
there was a single cause of action for negligence, which could be supported by
either theory.  Id.  Similarly, in this case,
Bray brought a claim for negligence and a claim for gross negligence.  Bray alleged a number of different
theories—specific acts of alleged negligence or gross negligence—to support
each claim.  Beechnut does not contend
that the expert reports are deficient in any way except that they fail to
address each specific act of alleged negligence or gross negligence.  Because each specific allegedly wrongful act
that could support liability is not a separate claim for negligence or gross negligence,
the trial court did not abuse its discretion by failing to dismiss Bray’s
claims.  See id.

          The
Fourteenth Court of Appeals has reached the same conclusion in slightly
different circumstances than those presented in Certified EMS.  In University
of Texas Medical Branch at Galveston v. Kai Hui Qi, the claimant alleged multiple acts of negligence, including a
deviation from the standard of care in treating the patient’s condition and
failing to refer the patient to a specialist. 
No. 14-11-00704-CV, 2012 WL 1406466, at *7 (Tex. App.—Houston
[14th Dist.] Apr. 24, 2012, no pet. h.). 
The expert report did not address these two allegedly negligent acts,
but it did address other alleged acts and omissions.  Id.  The Fourteenth Court rejected the argument
that the failure to address two of multiple acts or omissions alleged required
the dismissal of the claimant’s healthcare liability claim:  “An expert is not required to address each
and every act or omission mentioned in the pleadings, so long as at least one
liability theory within each cause of action is sufficiently addressed.”  Id.


          Beechnut
attempts to distinguish Certified EMS
by asserting, “This Court’s holding in [Certified
EMS] applies to future, not-yet-pled liability theories against health care
defendants.”  It appears the following is
the language upon which Beechnut relies: “. . . [T]he plain language
does not require an expert report to set out each and every liability theory that might be pursued by the claimant as
long as at least one liability theory within a cause of action is shown by the
expert report.”  Certified EMS, Inc., 355 S.W.3d at 691 (emphasis
added).  But nothing in the quoted
language limits the court’s holding to “not-yet-pled liability theories.”  Indeed, the court’s holding actually addressed
two pleaded liability theories—direct liability and vicarious liability.  Id.
at 686 (“[Potts] eventually brought suit against Certified EMS asserting that
it was vicariously liable for Hardin’s conduct under a respondeat superior
theory and directly liable for its own negligence in training and supervising
Hardin.”).  Beechnut’s attempt to
distinguish Certified EMS is not
persuasive. 

          Beechnut
does not challenge the qualifications of the experts or the adequacy of the
reports concerning the specific acts of negligence and gross negligence
addressed in the reports.  Rather,
Beechnut only challenges the failure of the expert reports to address each act
or omission alleged in Bray’s petition. 
For the reason discussed above, we conclude that the trial court did not
abuse its discretion in refusing to dismiss Bray’s healthcare liability
claim.  See Certified EMS, Inc., 355 S.W.3d at 700.

          We
overrule Beechnut’s first issue.




 

Attorney’s Fees

          Beechnut
complains that the trial court abused its discretion by failing to award its attorney’s
fees on the basis the trial court’s underlying decision on the motion to
dismiss was erroneous.  Because we have
upheld the trial court’s ruling, and Beechnut does not advance any other ground
for imposing an attorney’s fee award, we conclude that the trial court did not
abuse its discretion in determining Beechnut was not entitled to attorney’s
fees.  See Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(b)(1) (West Supp. 2011) (mandating dismissal of
the claim and award of attorney’s fees when “an expert report has not been
[timely] served”). 

          We
overrule Beechnut’s second issue.

Conclusion

          We
affirm the order of the trial court.

 

 

                                                                   Rebeca
Huddle

                                                                   Justice


 

Panel consists of Justices
Higley, Sharp, and Huddle.