**Opinion issued April 30, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00074-CV

————————————

**GRETCHEN HUEPERS, INDIVIDUALLY, AND AS INDEPENDENT EXECUTRIX OF THE ESTATE OF JAMES HUEPERS, Appellants**

**V.**

**ST. LUKE'S EPISCOPAL HOSPITAL, Appellee**

---

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Case No. 2009-04057**

---

## MEMORANDUM OPINION

In this interlocutory appeal, Gretchen Huepers, individually, and as independent executrix of the estate of James Huepers ("Huepers"), argues that, having satisfied the requirements for an expert report in this medical negligence

case,[1] the trial court's dismissal of her claims against St. Luke's Episcopal Hospital's ("St. Luke's") was error. We agree and reverse and remand.

## Background

James Huepers was admitted to St. Luke's on August 15, 2007 for suspected upper gastrointestinal bleeding. After an examination by gastroenterologist Dr. Susana Escalante-Glorsky, an endoscopy was scheduled for the next day to confirm her impressions. That night, however, Mr. Huepers' blood pressure dropped to dangerously low levels, prompting resident physician Dr. Antonious Attallah to order intravenous saline and a blood count determination. The next morning Huepers vomited blood, passed blood rectally, entered cardiac arrest, and displayed no pulse. He was revived, however, and the endoscopy performed later that day identified a large ulcer with a visibly bleeding vessel. Although the bleeding was stopped, Mr. Huepers never regained neurological function from his cardiac arrest and died August 19, 2007.

Huepers sued St. Luke's for wrongful death resulting from the negligent conduct of "its resident physician, employee, agent and representative," Dr. Attallah. St. Luke's was timely served an expert report and curriculum vitae of Dr. David Sales, who opined that the failure to diagnose or recognize Mr. Huepers' hypotension as a life-threatening hemorrhage and immediately advise his attending

---

[1] TEX. CIV. PRAC. & REM. CODE. ANN. § 74.351 (West 2011).

2

physician and/or gastroenterologist of that hypotension, deviated from the standard of care. Had the condition been recognized and the gastroenterologist notified, the report states, an emergency endoscopy could have been performed to stop the hemorrhaging that ultimately caused Mr. Huepers' death.

During discovery, St. Luke's disclosed that Dr. Attallah was not a St. Luke's employee, as recited in Huepers' Original Petition, but an employee of Baylor College of Medicine ("Baylor"). So informed, Huepers amended the pleadings, dropped St. Luke's as a party, and named Baylor as vicariously responsible for the conduct of Dr. Attallah.[2] Subsequent to being added as a defendant, Baylor filed a motion to designate St. Luke's as a responsible third party, arguing that despite having been directed to monitor Huepers' blood pressure and hemoglobin levels and report any decline below a certain point to Mr. Huepers' physicians, Dr. Attallah included, the St. Luke's nursing staff failed to do so.[3]

The August 4, 2010 deposition testimony of Baylor's expert, Dr. Hamat, noted that monitoring Mr. Hueper's test results and alerting the doctors if his hemoglobin fell below a certain level was the responsibility of the St. Luke's nursing staff. Their failure to follow the directives of the patient's chart and notify

---

[2] Huepers served St. Luke's with a notice of "nonsuit" on August 3, 2009. Although characterized as a "nonsuit," it was a voluntary partial dismissal of claims. *See C/S Solutions, Inc. v. Energy Maint. Servs. Grp. LLC*, 274 S.W.3d 299, 306–07 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

[3] The motion was granted.

3

the physicians of the change in his hemoglobin level breached the standard of care. Had it not been for the nursing staff's breach, Dr. Hamat testified, Mr. Huepers would have likely survived. The following month, Huepers amended her petition to reflect her claim that St. Luke's was vicariously liable for Mr. Huepers' death due to the negligent conduct of its nursing staff and, on November 22, 2010, served St. Luke's with three additional expert reports authored by Keith Fiman, M.D., Dr. Hamat, and Bonnie Juneau, Ph.D. in support of the nursing negligence claims. St. Luke's objected to these reports as untimely (669 days after the original petition was filed) [4] and moved to dismiss with prejudice, arguing that the claim as to the nurses' conduct was separate and distinct from the vicarious liability claim asserted against St. Luke's in the original petition and, as such, required a timely expert report.

St. Luke's further argued that the report authored by Dr. Sales, although timely, was so deficient as to Huepers claim of nursing misconduct, it constituted "no report at all". Huepers filed a response and, in the event the trial court found any portion of her report to be deficient, requested a thirty-day extension to cure such deficiencies under section 74.351(c). *See* TEX. CIV. PRAC. & REM. CODE § 74.351(c) (West 2011).

---

[4] *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a) (requiring health care liability plaintiffs serve expert reports within 120 days of date first petition naming defendant filed).

4

The trial court granted St. Luke's motion, dismissed Huepers claims with prejudice, and this interlocutory appeal followed.

**Jurisdiction**

St. Luke's challenges our jurisdiction to consider this interlocutory appeal, characterizing it as an appeal not from the grant of a motion seeking relief pursuant to section 74.351(*l*), but, rather, the grant of a motion to dismiss pursuant to 74.351(b), from which interlocutory order there is no appeal. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(b), (*l*) (West 2011).

Huepers maintains this to be an interlocutory appeal filed pursuant to section 51.014(a)(10) of the Texas Civil Practice and Remedies Code,[5] which permits interlocutory appeal from the grant of a defendant's motion challenging an expert report's sufficiency if, after hearing, it appears to the trial court that the report "does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*).

***Standard of Review***

We review a challenge to our jurisdiction de novo. *IFS Sec. Grp., Inc. v. Am. Equity Ins. Co.*, 175 S.W.3d 560, 562 (Tex. App.—Dallas 2005, no pet.); *cf. Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998) (explaining that

---

[5]  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(10) (West Supp. 2012).

5

standard of review for appellate jurisdiction under ripeness doctrine is de novo). We must dismiss the appeal "[i]f the record does not affirmatively demonstrate [our] jurisdiction." *IFS Sec. Grp.*, 175 S.W.3d at 562.

*Applicable Law*

In the absence of the entry of a final and appealable order by the trial court, our jurisdiction to consider an interlocutory appeal is limited to those specifically authorized by statute. *Morris v. Umberson*, 312 S.W.3d 763, 765 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (citing *Stary v. DeBord*, 967 S.W.2d 352, 352–53 (Tex. 1998)). Appeal of interlocutory rulings on the expert reports required by Chapter 74 can proceed under two scenarios—only one of which is applicable here: when the trial court grants relief sought by a motion under section 74.351(*l*). [6] TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(10). Section 74.351(*l*) requires a trial court to grant a defendant's motion challenging the report's sufficiency if, after hearing, it appears to the court that the report "does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*).

---

[6] Section 51.014(a)(9) of the Civil Practice and Remedies permits interlocutory appeals when a trial court *denies* all or part of the relief sought by a motion under section 74.351(b). TEX. CIV. PRAC. & REM. CODE § 51.014(a)(9) (West Supp. 2012). The order here, however, was a *grant* of relief and section 51.014(a)(9) does not apply.

*Analysis*

Our determination of the jurisdiction issue is premised upon the nature of the relief sought from the trial court by St. Luke's motion to dismiss, and is guided not merely by the motion's title, but its substance. *Castro v. Shell Oil Co.*, No. 01-10-00609-CV, 2011 WL 1234382, at *1 (Tex. App.—Houston [1st Dist.] March 31, 2011, no pet.) (mem. op.) (citing *Surgitek, Bristol–Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999)). St. Luke's motion to dismiss argues that no timely expert report was filed with respect to Huepers' vicarious liability claim for nursing negligence since Fiman's, Hamat's, and Juneau's reports addressing the nursing negligence claim were served 669 days after the original petition was filed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2011). As to Dr. Sales' report, although timely served, because it failed to address the conduct of the nurses, St. Luke's argues it to have been so deficient as to constitute "no report at all" on the nursing negligence claim.[7] Because the substance of St. Luke's motion to dismiss challenged both the timeliness of the Fiman, Hamat and Juneau reports, as well as the sufficiency of Sales report, we conclude that the trial court's order granted the relief sought by the motion under section 74.351(*l*). *See* TEX. CIV.

---

[7] Although objections to the sufficiency of a report must be lodged with 21 days or are waived, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), St. Luke's motion complaining of Dr. Sales' report challenges the sufficiency of his report and thus seeks relief pursuant to section 74.351(*l*). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(10).

7

PRAC. & REM. CODE ANN. § 74.351(*l*) (challenge to sufficiency of expert report). As such, our consideration of Huepers' appeal is pursuant to the statutory jurisdictional grant. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(10).

## WAS THE GRANT OF ST. LUKE'S MOTION TO DISMISS ERROR?

Huepers' sole issue contends that the trial court erred in granting St. Luke's motion to dismiss since the requirements of section 74.351 were satisfied when Dr. Sales' report was timely served because the allegations of nursing negligence are within the same cause of action to which Dr. Sales' report speaks.

### *Standard of Review*

We review the trial court's ruling regarding expert reports for abuse of discretion. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *See Walker*, 111 S.W.3d at 62. A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *Maxwell v. Seifert*, 237 S.W.3d 423, 426 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). However, if resolution of the issue requires statutory construction we apply a de novo standard of review. *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 352

8

(Tex. 2009); *Stoud v. Grubb*, 328 S.W.3d 561, 563 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

*Applicable Law*

Medical-malpractice plaintiffs must serve each defendant physician and health care provider with an expert report or voluntarily nonsuit the action. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). If a claimant timely furnishes an expert report, a defendant may file a motion challenging the report's adequacy. *Id.* The trial court shall grant the motion only if, after a hearing, it appears that the report does not represent a good faith effort to comply with the statutory definition of an expert report. *See id.* § 74.351(*l*). "'Expert report' means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); *Jelinek v. Casas*, 328 S.W.3d 526, 540 (Tex. 2010) ("[T]he plaintiff need not marshal all of his proof in the [expert] report, but he must include sufficient detail to allow the trial court to determine if the claim has merit."); *Palacios*, 46 S.W.3d at 877–78 (expert report must include expert's opinions on three statutory elements—standard of care, breach, and causation); *Gray v. CHCA Bayshore, L.P.*, 189 S.W.3d 855, 859

9

(Tex. App.—Houston [1st Dist.] 2006, no pet.). "If an expert report has not been served . . . because elements of the report are found deficient, the court may grant one 30–day extension to the claimant in order to cure the deficiency." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c).

The Texas Supreme Court recently affirmed our opinion in *Certified EMS, Inc. v. Potts*, albeit on different grounds. *Certified EMS, Inc. v. Potts*, 355 S.W.3d 683, 691 (Tex. App.—Houston [1st Dist.] 2011), a*ff'd on other grounds*, 392 S.W.3d 625 (Tex. 2013) (*Potts I*). In that case, we held that if a medical-malpractice claimant served a timely expert report that adequately addressed at least one theory of a defendant health care provider's liability, that claimant could proceed with the entire cause of action against that defendant, including any particular liability theories not addressed by the initial expert report, as long as those liability theories were contained within the same cause of action (i.e., arose out of the same set of operative facts). *See Potts I*, 355 S.W.3d at 691. Noting that "[t]he focus on operative facts raises more questions than it answers," the Supreme Court declined to follow this approach and held instead that a medical-malpractice claimant can proceed with its case against a defendant so long as it timely files an expert report that adequately addresses at least one pleaded theory of liability asserted against that defendant—period. *See Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630, 632 (Tex. 2013) (*Potts II*). After discussing the gate-keeping

10

function served by section 74.351 and important policy considerations, the Court concluded its approach was consistent with the legislative intent behind chapter 74. *Id.* at 631 ("[i]f a health care liability claim contains at least one viable liability theory, as evidenced by an expert report meeting the statutory requirements, the claim cannot be frivolous. The Legislature's goal was to deter baseless claims, not to block earnest ones;" noting that if chapter 74 was interpreted to require claimants to serve new report each time new theory of liability was discovered, as Certified EMS argued, this would "effectively eliminat[e] a claimant's ability to add newly discovered theories," and there was no indication legislature intended such a result). The Court held that an expert report that "adequately addresses at least one pleaded liability theory satisfies the statutory requirements, and the trial court must not dismiss in such a case." *Id.* at 632.

*Analysis*

Huepers' service of an expert report and curriculum vitae of gastroenterologist Dr. David Sales upon defendant St. Luke's within 120 days of filing her original petition complied with the statute. Critical of Dr. Attallah's, failure to, *inter alia*, recognize Mr. Huepers' life threatening condition and notify his physicians, Dr. Sales' report mistakenly described Dr. Attallah as employed by St. Luke's. Lodging no objection to the sufficiency of the report with 21 days as required, St. Luke's waived any challenges to the adequacy of the report.

11

When subsequently discovered that Dr. Attallah was an employee of Baylor, Baylor was named as a defendant and St. Luke's dropped as a defendant and added as a responsible third party. Thereafter, further discovery established that St. Luke's nursing staff was also responsible for monitoring Mr. Huepers' test results and informing his physicians of declines of his hemoglobin or blood pressure, Huepers amended her pleading to add St. Luke's as a defendant for its vicariously liability for Mr. Huepers death based upon the negligent conduct of its nursing staff.

Huepers maintains that because Dr. Sales' previous expert report detailed at least one viable theory of liability against St. Luke's, the vicarious liability claim for nursing negligence set out in her amended petition required no additional expert report detailing the additional claim.[8]

St. Luke's argued to the trial court that Huepers' nursing negligence argument was a new "health care liability claim" that required her to file a new expert report; the trial court agreed. Neither St. Luke's nor the trial court, however, had the benefit of the opinions in *Potts I and Potts II*.

As the Supreme Court acknowledged in that case, "[i]t may be difficult or impossible for a claimant to know every viable liability theory within 120 days of filing suit, and the Act reflects this reality." *Potts II*, 392 S.W.3d at 632. The

---

[8] St. Luke's appellate briefing focuses on the jurisdictional issue and does not address Huepers' argument with respect to this issue.

Court further stated that chapter 74 only requires "the expert report to summarize the expert's opinions 'as of the date of the report,' and thus, the statute recognizes that those "opinions are subject to further refinement." *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6)). Moreover, "[d]iscovery can reveal facts supporting additional liability theories, and the [chapter 74] does not prohibit a claimant from amending her petition accordingly." *Id.*

Such is the case here. Initially understanding that the St. Luke's employee responsible for monitoring Mr. Huepers' test results was Dr. Attalla, a timely expert report was served that addressed this theory of vicarious liability. St. Luke's did not timely object to the sufficiency of the report, and, thus, it waived any challenge to the adequacy of the report. No further report was required when her petition was amended to add a new theory of vicarious liability against St. Luke's based upon nursing negligence and the trial court erred in granting St. Luke's motion to dismiss. *Id.*

## Conclusion

We reverse and remand for further proceedings.

Jim Sharp
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

13