**Opinion issued March 8, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00718-CV

————————————

**HUMBLE SURGICAL HOSPITAL LLC, HUMBLE SURGICAL HOSPITAL SERVICES, L.L.C., HUMBLE SURGICAL HOLDINGS, L.L.C., HOUSTON HUMBLE SURGICAL, P.L.L.C., HUMBLE SPINE SURGERY, P.L.L.C., Appellants**

**V.**

**CHRISTY L. TRAYNOR, Appellee**

---

**On Appeal from the County Civil Court at Law No. 2**
**Harris County, Texas**
**Trial Court Case No. 1044724**

---

## MEMORANDUM OPINION

This is an accelerated appeal from the denial of a motion to dismiss for failure to file an adequate medical malpractice expert report. We affirm.

## BACKGROUND

Plaintiff-appellee Christy Traynor sued defendants Humble Surgical Hospital, L.L.C., Humble Surgical Hospital Services, L.L.C., Humble Surgical Holdings, L.L.C., Houston Humble Surgical, P/L.L.C., Humble Spine Surgery, P.L.L.C. (collectively, "hospital defendants") and Kelly Joe Bunyard, individually. Her claims stem from alleged inappropriate physical contact by nurse Bunyard as Traynor was recovering from surgery.

### A. Traynor's Claims

Traynor's petition alleges that, "[d]uring the course of [medical] care and treatment, Defendants and their respective agents, ostensible agents, agents by estoppels and/or employees, engaged in several acts and omission constituting negligence, and such acts and omissions, among others, are as follows:

> (a) In failing to properly hire and retain the nursing care provided to Plaintiff;
> (b) In failing to properly supervise the nursing care provided to Plaintiff;
> (c) In failing to monitor the nursing care provided to Plaintiff; and
> (d) In failing to properly treat the Plaintiff."

### B. Traynor's Chapter 74 Expert Reports

Traynor initially filed two Texas Medical Liability Act (TMLA) expert reports under Chapter 74 of the Texas Civil Practice and Remedies Code, and curriculum vitaes for their authors, Priscilla Ray, M.D., and Cathy Miller, R.N.,

2

Ph.D. Bunyard did not file an objection to the adequacy of the reports. In response to the other hospital defendants' motion to dismiss for failure to produce an adequate expert report, Traynor was granted an extension to cure any alleged deficiencies in the reports. Traynor then filed additional reports by Ray and Miller. Below is a brief summary of the expert reports:

1. **Priscilla Ray, M.D.**

Dr. Ray is a physician with board certification in Psychiatry and Neurology, and she is certified in Forensic Psychiatry. Dr. Ray's report indicated that her information was derived from (1) records from Humble Surgical Hospital, (2) records from Hope for the Hurting Home, (3) records from the Texas Nursing Board, (4) her forensic psychiatric interview of Traynor, (4) her interview with Traynor's fiancé Doug Burleson, and (5) her interview with Traynor's sister, Wendy Dibenedetto.

The report contains the following factual summary:

Ms. Christy Traynor was admitted to Humble Surgical Hospital in mid-December 2011 and had C6~7 anterior cervical discectomy and auxiliary procedures. The night after her surgery, nursing care was provided by Kelly Bunyard. Ms. Traynor reports that, while she still had in a urinary catheter, was still unable to speak except in a whisper and while the call bell was too far to reach, Mr. Bunyard undertook to massage a "crick" in her neck but massaged her back, untied her hospital gown and, over her protests, touched her buttocks and tried to move his hand around to the front. Ms. Traynor, noting Mr. Bunyard's sexual excitement, feared she was about to be raped. Even after he left, he returned several times to offer more pain medication and Ms. Traynor feared that he would come back to do more. In the morning,

3

she was reluctant to tell her sister and a nurse about the incident but ultimately did so.

Ray's report summarized the three referral questions and her opinions as follows:

1) "Did the behavior of the staff at Humble Surgical Hospital staff fall below the standard of care in the treatment of Ms. Traynor?

A. "Yes. Mr. Bunyard was a nurse In the Humble Surgical Hospital caring for Ms. Traynor after her surgery. The Texas Nursing Board substantiated charges that Mr. Bunyard "Inappropriately'" touched Ms. Traynor, which falls below the standard of behavior and care owed a patient. Please see my attached Forensic Psychiatric Examination report for more details."

2) "If the answer to Question # 1is affirmative, what psychiatric illness, if any, did Ms. Traynor suffer as a result of actions which fell below the standard of care?"

A. "It Is my opinion that, due to the behavior of Mr. Bunyard described above, Ms. Traynor suffers from the following psychiatric illness:

Post Traumatic Stress Disorder, Improved but not resolved

She meets the following criteria of Post Traumatic Stress Disorder from the Diagnostic and Statistical Manual of Mental Disorders Fifth Edition (DSM 5);

A, B1-5, C1-2, D2, D4-6, E3-6, F, G, H

Information about the above criteria in general and as applied to Ms. Traynor is contained in my expanded report entitled "Forensic Psychiatric Examination" (attached).

3) If the answer to Question #2 is affirmative, what is Ms. Traynor's prognosis in regard to the Illness?

4

A.  Her prognosis is Fair. Please see my attached Forensic Psychiatric Examination report for expanded discussion of the prognostic factors which both Improve and limit her prognosis;

## 2.  Cathy Miller, R.N., Ph.D.

Nurse Miller is a nursing professor with twenty years of nursing experience and has served in several administrative director positions.  She holds adult and pediatric Sexual Assault Nurse Examiner certificates and has published and presented on the topics of emergency nursing care of sexual assault victims and psychological complex trauma.  Miller's report indicates that she reviewed Traynor's medical records and the Texas Board of Nursing documents.

Miller's report identifies a list of specific Texas Board of Nursing Nurse Practice Act violations by Bunyard.  She opines that "Nurse Bunyard violated the standards of care required of any reasonable nurse in the same or similar situation." Her report also opines on the following deficiencies of the other defendants:

1.  The organizations were negligent in adequately screening applicants prior to hire as evidenced by lack of a pre-hire comprehensive background check.

2. The organizations were negligent inadequately training staff on sexual misconduct suspicion, reporting, and prevention as evidenced by a lack of employee handbook or other training materials prior to the date of incident.

3. The organizations failed to have policy and procedures in place to determine appropriate patient assignments.

4. The organization failed to have adequate policy and procedures in place for the supervision of nursing care as evidenced by no record of charge nurse or house supervisor rounding on Ms. Traynor.

5

5. The organization failed to have adequate policy and procedures in place for the monitoring of telemetry patients as evidenced by Ms. Traynor being "off monitor" for 30 minutes or more. The removal of Ms. Traynor from the telemetry monitor coinciding with the timing of the nurse's hourly rounding documentation as evidenced by a) no rhythm strip in medical record for the time and b) "0"' showing on the vital signs system generated vital signs record.

## C. The Trial Court's Proceedings

The hospital defendants renewed their objection to the adequacy of Traynor's Chapter 74 reports. Following a hearing, the trial court denied the hospital defendants' motion to dismiss, and those defendants' timely brought this interlocutory appeal. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West 2014).

## ISSUE ON APPEAL

The hospital defendants' brief identifies their issue on appeal as follows:

"Whether the trial court erred in refusing to dismiss this action as required by Chapter 74 of the Texas Civil Practice & Remedies Code after Appellee failed to serve compliant amended expert reports, despite being given an opportunity to cure her deficient expert reports, because:

a.  neither expert established that they were qualified to opine on Appellant's standard of care;

b.  the amended expert reports failed to provide specific information as to what policies and procedures should have been in place as it relates to Appellant's hiring, supervision and retention of employees;

c.  the amended expert reports' reliance on Nurse Bunyard's alleged breach of the standard of care is misplaced as to

Appellant because vicarious liability is not applicable to allegations of sexual assault as a matter of law; and

d. the amended expert reports failed to provide specific information as to how Appellant's lack of adequate policies and procedures was a substantial factor in Appellee's injuries."

**APPLICABLE LAW AND STANDARD OF REVIEW**

Chapter 74 of the Texas Civil Practice and Remedies Code requires a health care liability claimant to file "one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2011). Chapter 74 does not "require the serving of an expert report regarding any issue other than an issue relating to liability or causation." *Id*. § 74.351(j).

Section 74.351 requires the expert report to provide a fair summary of the expert's opinions regarding: (1) the applicable standards of care; (2) the manner in which the care rendered failed to meet the standards; and (3) the causal relationship between that failure and the injury, harm, or damages claimed. *Id*. § 74.351(r)(6); *Gray v. CHCA Bayshore, L.P.*, 189 S.W.3d 855, 858–59 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

The expert report need not marshal all of the plaintiff's proof, but it must demonstrate an objective good faith effort to comply with the statutory requirements. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(1); *Am.*

7

*Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878–79 (Tex. 2001); *Strom v. Mem'l Hermann Hosp. Sys.*, 110 S.W.3d 216, 221 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). To constitute a good faith effort to comply with the statute, the report must provide enough information to fulfill two purposes: it must (1) inform the defendant of the specific conduct that the plaintiff has called into question; and (2) provide a basis for the trial court to conclude that the claims have merit. *Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011); *Palacios*, 46 S.W.3d at 879; *Gray*, 189 S.W.3d at 859. In making this determination, we review the information contained within the four corners of the report. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). A conclusory report does not fulfill these two purposes. *Palacios*, 46 S.W.3d at 880. The Act grants the trial court discretion to grant a plaintiff who timely serves a report one 30–day extension to cure its deficiencies. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c).

We review a trial court's denial of a motion to dismiss under section 74.351 for abuse of discretion. *Palacios*, 46 S.W.3d at 875; *Group v. Vicento*, 164 S.W.3d 724, 727 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Larson v. Downing*, 197 S.W.3d 303, 304–05 (Tex.

8

2006); *Mem'l Hermann Healthcare Sys. v. Burrell*, 230 S.W.3d 755, 757 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

## ANALYSIS

Traynor sued (1) Bunyard, individually, complaining that his nursing violated the applicable standards of care, and (2) sued the hospital defendants both under direct-liability theories and under the theory that they are vicariously liable for Bunyard's violations of the standard of care.

The hospital defendants argue that (1) the expert reports are deficient as to Traynor's direct liability theories against the hospital defendants, and (2) as a matter of law, they cannot be vicariously liable for Bunyard's sexual assault. Traynor responds that (1) the reports as to direct liability against the hospital defendants are adequate, and (2) the hospital defendants cannot limit her vicarious liability theories against them based on their own narrow interpretation of her allegations.

Before considering these arguments, we must preliminarily address the effect of neither Bunyard nor the hospital defendants' challenging the adequacy of the expert reports related to Bunyard's care of Traynor and Traynor's reliance, in part, on a vicarious-liability theory against the hospital defendants.

9

## A. *Certified EMS, Inc. v. Potts*

Prior to 2013, there was a split among the courts of appeals about whether a health-care liability claimant needed to support each claim and liability theory with an adequate Chapter 74 expert report, or whether one viable theory, adequately supported by an expert report, was sufficient to maintain the entire case. The supreme court addressed, and resolved, this split in *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625 (Tex. 2013) by holding that a single viable liability theory is sufficient to defeat a motion to dismiss for failure to provide an adequate expert report.

As in this case, the patient-plaintiff in *Potts* sued complaining of a male nurse's inappropriate sexual contact during a hospital stay. *Certified EMS v. Potts*, 355 S.W.3d 683, 685–86 (Tex. App.—Houston [1st Dist.] 2011) (*Potts I*), *aff'd* 392 S.W.3d 625 (Tex. 2013). The nurse, Les Hardin, was not an employee of the hospital, but instead employed by Certified EMS, a nurse-staffing agency. *Id*. at 686. Potts sued the hospital, the nurse, and Certified EMS. She specifically asserted, as to Certified EMS, that it was "vicariously liable for Hardin's conduct under a respondeat superior theory and directly liable for its own negligence in training and supervising Hardin." *Id*.

Potts served her expert reports under section 74.351, and Certified EMS objected to the reports and sought dismissal. *Id*. After the trial court denied the

motion to dismiss, Certified EMS brought an interlocutory appeal to this Court. *Id.* at 685, 687–88. In reviewing the sufficiency of Potts's reports and Certified EMS's objections, we determined that the experts' reports adequately supported "Potts's theory that Certified EMS is vicariously liable under the doctrine of respondeat superior," but that it did not support her claim that "Certified EMS might be directly liable for its own conduct." *Id.* at 687. We nonetheless concluded that the trial court properly denied Certified EMS's motion to dismiss:

> We conclude that Potts's expert report adequately addresses facts describing the improper sexual conduct by the nurse, and the report, therefore, is adequate as to his employer, Certified EMS, under the vicarious-liability legal theory of respondeat superior. Because the lawsuit by Potts may proceed against Certified EMS under at least one liability theory for the cause of action concerning the nurse's improper sexual contact with Potts, Potts may proceed with any and all liability theories for this cause of action, regardless whether those other liability theories were shown in an adequate expert report.

*Id.* at 700.

The supreme court affirmed our opinion, noting that "[n]o provision of the Act requires an expert report to address each alleged liability theory." *Potts*, 392 S.W.3d at 630. Rather, the court explained, the trial court's task when faced with a motion to dismiss for failure to file an adequate expert report is not to parse and individually examine each theory of liability, but only to determine if there is a complying report supporting at least one theory:

> A valid expert report has three elements: it must fairly summarize the applicable standard of care; it must explain how a physician or health

11

care provider failed to meet that standard; and it must establish the causal relationship between the failure and the harm alleged. TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6); *see Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011). A report that satisfies these requirements, even if as to one theory only, entitles the claimant to proceed with a suit against the physician or health care provider.

*Id*. Because the expert's report in *Potts* sufficiently supported the plaintiff's theory of vicarious liability against Certified EMS, the court held the "lack of a description supporting direct liability is not fatal to the claimant's maintaining her cause of action." *Id*. at 626.

## B. Application of *Potts* to this case

The hospital defendants do not challenge the adequacy of the reports as to Baryard's conduct. But they argue that *Potts* is distinguishable because Certified EMS did not challenge the expert's report's adequacy concerning vicarious liability in that case. In contrast, the hospital defendants here argue that, as a matter of law, they are not vicariously liable for Barnyard's sexual assault. Thus, they argue that any expert report premised upon vicarious liability is insufficient as a matter of law.

Traynor responds that "whether vicarious liability will ultimately succeed is not before this Court." She contends that the hospital's "[a]sserting a summary judgment argument regarding vicarious liability, before discovery has even begun, is premature and inappropriate." Instead, she insists, "the only issue before the Court at this phase in this proceeding is whether Traynor has presented expert

12

reports which inform the Appellants of the specific conduct that Trynor has called into question and provide a basis for the trial court to conclude that the claims have merit." We agree with Traynor.

The hospital defendants argue that an employer cannot be vicariously liable for sexual assault, and cite various cases finding assaults to be outside the scope of employment. The hospital defendants do not cite, however, authority for the proposition that the ultimate viability of legal theories such as vicarious liability are the appropriate subject of review in an interlocutory appeal from a denial of a motion to dismiss under Chapter 74. Our own research likewise has failed to uncover any authority supporting this argument.

Whether Traynor's vicarious liability theory against the hospital defendants ultimately succeeds should be determined on the merits in the trial court in the first instance. As the supreme court's opinion in *Potts* recognized, claims get abandoned and added throughout discovery, and summary judgment motions allow trial courts to dispose of ultimately untenable claims. 392 S.W.3d at 632.

*Potts* hold that "when a health care liability claim involves a vicarious liability theory, either alone or in combination with other theories, an expert report that meets the statutory standards as to the employee is sufficient to implicate the employer's conduct under the vicarious theory." *Id*. The hospital defendants do not dispute that the expert reports here meet the statutory standards as to Bunyard's

conduct. The reports also implicate the hospital defendants, both directly and through vicarious liability for Bunyard's actions. Under *Potts*, the trial court did not err in refusing to grant the hospital's motion to dismiss.

## CONCLUSION

We affirm the trial court's interlocutory order denying appellants' motion to dismiss.



Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Keyes and Higley.